# CHARLESTON.

## McKain v. Baltimore & Ohio R. R. Co.

### Submitted June 12, 1908.   Decided March 2, 1909.

1. CARRIERS—*Liability for Injury to Passengers—Special Police Officer—"Public Officer."*

   A special officer, appointed and commissioned by the governor, at the instance of a railroad company, under the provisions of sec. 31, ch. 145, Code 1899, sec. 4281, Code 1906, and paid by such company for his services, is *prima facie* a public officer. for whose wrongful acts such company is not liable. (p. 235.)

2. SAME—*Relation of Parties—Special Police Officer.*

   If such an officer is engaged in special service for the company, such as guarding its property or enforcing obedience to its rules and regulations, and does a wrongful act for which the injured party is entitled to damages, and such act was within the scope of such service or employment, the company is liable as in the case of its regular employes such as conductors and station masters. (p. 239.)

3. SAME.

   But the company is not liable for a false arrest, assault and

battery and malicious prosecution, not directed nor instigated by it, and founded upon an alleged breach of the peace at one of its stations, in no way ·affecting or involving, so far as the evidence discloses, any of its property, rights or servants, nor growing out of any transaction between the plaintiff and the company, although the plaintiff was' rightfully in the station, having a ticket and awaiting the arrival of a train, and the alleged breach of the peace, arrest and assault and battery occurred on the premises of the company. (p. 241.)

4.   Railroad Company not Liable.

Evidence disclosing the facts and circumstances above stated and nothing more, is insufficient to sustain a verdict against the railroad company at whose instance the special officer was appointed and by whom he was paid for his public services, and the trial court properly set it aside. (p. 240.)

Error to Circuit Court, Marion County.

Action by Charles J. McKain against the Baltimore & Ohio Railroad Company. There was a verdict for plaintiff, and, from an order setting the same aside and granting a new trial, he brings error.

*Affirmed.*

Harry Shaw and C. H. Leeds, for plaintiff in error.

U. N. Arnett, Jr., and John Bassel, for defendant in error.

Poffenbarger, Judge:

Charles J. McKain complains of an order, made by the circuit court of Marion county, setting aside a verdict in his favor for $300.00 and awarding the defendant, the Baltimore and Ohio Railroad Company, a new trial in the case. The action is for damages for false arrest and imprisonment and assault and battery, alleged to have been committed by the defendant through its agents, and refusal to carry and transport the plaintiff, as it had contracted to do by selling him a ticket. The arrest was predicated on an alleged assault, committeed, at the Fairmont station of the defendant, upon Mrs. J. H. Downey, wife of the special officer who made the arrest. The evidence, bearing on the question of probable cause therefor, is highly conflicting, and renders it one clearly proper for jury determination. The plaintiff denies having molested the lady in any way, and she, her husband and another man stoutly assert the contrary, saying

he rudely pushed or shoved her as he passed them, while they were standing and engaged in conversation. It is hardly necessary to say this made a case proper for jury determination. If the railway company is responsible for the acts done by Downey, the arrest, assault and battery and imprisonment being regarded, agreeably to the finding of the jury, as having been inflicted without probable cause or justification.

Downey was a special policeman, commissioned by the Governor of the State, by virtue of the authority vested in him by section 31 of chapter 145 of the Code, upon the application of the defendant, and employed and paid by it. He had qualified as such officer and filed a copy of his oath of office in the clerk's office of the county court of the county in which he made the arrest. His powers are thus defined in the section of the statute above named: "Every police officer appointed under the provisions of this act shall be a conservator of the peace within each county in which any part of said railroad may be situated, and in which such oath or a certified copy thereof shall have been filed with the clerk of the county court or other tribunal established in lieu thereof; and, in addition thereto, he shall possess and may exercise all the powers and authority, and shall be entitled to all the rights, privileges and immunities, within such counties, as are now, or may hereafter be, vested in or conferred upon the regularly elected or appointed constables of said county." The statute also authorizes any railroad company at whose instance such an appointment has been made to dispense with the services of the officer by filing a notice to that effect, and thereupon his powers "cease and determine."

The reported decisions indicate that statutes similar to ours, providing for the appointment of special police officers, at the instance of corporations and payment by them for their services, have been passed in many of the states and construed by several of the courts. While no decision of this Court deals with the identical questions presented, namely, the status of such an officer and the extent to which his employer is liable for his acts, the numerous decisions of other courts having persuasive authority with us, render it comparatively easy to solve these questions. Such officers act, in the opinion of the courts, sometimes as servants of the company employing them, and sometimes

as officers of the state. *Deck* v. *Balt. & O. R. R. Co.,* 100 Md. 168; *Foster* v. *Grand Rapids Ry. Co.,* 140 Mich. 689; *Brill* v. *Eddy,* 115 Mo. 596; *Dickson* v. *Waldron,* 135 Ind. 507; *Sharp* v. *Erie Ry. Co.,* 184 N. Y. 100 (6 A. & E. Ann. Cas. 250); *Tyson* v. *Bauland Co.,* 186 N. Y. 397; *Healey* v. *Lothrop,* 171 Mass. 263; *Tucker* v. *Erie Ry. Co.,* 69 N. J. L. 19; *Cordner* v. *Railway.Co.,* 72 N. H. 413; *Thomas* v. *Can. Pac. R. R. Co.,* 14 Ont. L. Rep. 55 (8 A. & E. Ann. Cas. 324); *Daniel* v. *Railroad Co.,* 136 N. C. 517 (1 A. & E. Ann. Cas. 718). The import of these decisions is that such appointees, although paid for all their services by the persons at whose instances they are appointed, are not servants of such persons in respect to all the acts they perform by virtue of their offices; but only in respect to services rendered the company, such as defending or preserving its property. The line of distinction, sometimes hard to recognize under the circumstances of the particular case, marks the point at which the act ceases to be one of service to the employer and becomes one of vindication of public right or justice, the apprehension or punishment of a wrong-doer, not for the injury done to the employer, but to the public at large. Perhaps the clearest and best statement ·of it is that given by the eminent English Jurist Blackburn, in *Allen* v. *London &c. Ry. Co.,* L. R. 6 Q. B. 65, as frequently quoted by the American courts: "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back and an act done for the purpose of punishing the offender for that which has already been done. There is *no implied authority* in a person having the. custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property; it is done merely for the purpose of vindicating justice. And in this respect there is no difference between a railway company— which is a corporation—and a private individual; if the law were that the defendants are responsible for the act of their booking-clerk in giving the plaintiff into custody on an unfounded charge, every shopkeeper in London would be answerable for any act done by a shopman left in his shop who chose ·

to accuse a person of having attempted to plunder the shop, every merchant would be responsible for a similar act of his clerk, and every gentleman for the act of his butler or coachman." In order to make the employer liable, he must have directed the injurious and wrongful act to be done. Thus, in *Tolchester &c. Co.* v. *Steinmeier,* 72 Md. 313, one of the earliest cases on the subject in this country, the court held as follows: "1st. That the defendant was not·bound for the policeman's acts simply because he was appointed by the Governor at its nomination, or request, and because it paid his salary. 2nd. That the act of the policeman was that of a State officer in the exercise of his common law powers as such officer, and not executing the orders of the defendant. 3rd. That the act of arrest, to be effectually ratified by the defendant, must have been the act of its agent authorized to commit it." In *Tucker* v. *Erie Ry. Co.,* 69 N. J. L. 19, the court held as follows: "In order to render a company responsible for an unwarranted arrest made by one of such policemen, and a subsequent malicious criminal prosecution by him, it is necessary to show that his action was instigated by the company or some of its officers or employes." In *Foster* v. *Grand Rapids Ry. Co.,* 140 Mich. 689, the following proposition is asserted: "Where a special deputy sheriff, paid by a street-railway company, acts solely in his capacity as an officer in assaulting a passenger, and not by the direction of the conductor in charge of the car, the street-railway company is not responsible for the act."

But the direction or instigation need not be in express terms. It suffices that the officer in the employment of a private person or corporation had implied authority or direction from the employer to do the act. In other words, if the act done was within the scope of the duty imposed upon him in favor of the employer by his contract of service, the principle of *respondent superior* applies. "In an action against a corporation for a malicious prosecution instituted by one of its servants, where it is not shown that the servant had any express authority to institute the prosecution, the burden is upon the plaintiff to show that the servant, from the nature of his duties, had implied authority to prosecute the plaintiff." *Thomas* v. *Can. Pac. Ry. Co.,* cited. This principle is recognized in nearly, if not quite, all

of the cases above cited.    Others; further illustrating it, may be
found in the valuable notes to *Sharp* v. *Railway Co.*, 6 A. & E.
Ann. Cas. 250, and *Thomas* v. *Railway Co.*, 8 A. & E. Ann.
Cas. 324.    No such implication arises from the fact that the
officer is paid by the person at whose instance he was appointed.
Although so paid, he is *prima facie* a public officer and not a
private servant.    *Healey* v. *Lothrop*, 171 Mass. 263; *Tucker* v.
*Erie Ry. Co.*, 69 N. J. L. 19; *Cordner* v. *Railway Co.*, 72
N. H. 413; *Foster* v. *Railway Co.*, 140 Mich. 689; *Tyson* v.
*Bauland Co.*, 186 N. Y. 397.    But such officers frequently per-
form acts or services directly, immediately and primarily bene-
ficial to their employes and at their instance, and under their
direction.    Such special employment may include an express
direction to arrest or prosecute all persons whom the officer may
suspect of offenses against the property or rights of his employer.
If there is no such express direction, it may be inferred from
the nature of the duties imposed or the services to be rendered,
and, if so, the authorization or instigation is established by way
of implication.`    In such cases, the relation of master and servant
is made out, and then the question is whether the act done
was within the scope or course of the servant's or agent's em-
ployment and the principles enunciated in *Gillingham* v. *Rail-
road Co.*, 35 W. Va. 588, and *Davis* v. *Railroad Co.*, 61 W. Va.
246, in which the acts were done by railway conductors, apply.
In *Sharp* v. *Erie Ry. Co.*, 184 N. Y. 100, the plaintiff's decedent,
caught in the act of stealing a ride on a train, had been pursued
by a detective employed by the railway company out of the rail-
way yards on to adjacent lands and there shot by the latter.
There was evidence, tending to show that the railway company
had employed the detective to protect its track and property and
look after crimes committed against it and its right of `way,
and the court held that it was for the jury to say, under all
the facts and circumstances, shown in evidence, whether the
detective acted within the scope of his employment, or whether,
being a public officer, he acted in that capacity alone.    *Deck*
v. *Railway Co.*, 100 Md. 168, developed facts very similar to
those shown in *Sharp* v. *Railway Company* and the court held the
case one proper for jury determination.    The plaintiff had been
stealing a ride on a freight train and a special policeman,

employed by the company, ordered him off and then shot him when he was a few feet distant from the track. In *Dickson* v. *Waldron,* 135 Ind. 507, the plaintiff had been assaulted and beaten in a theater by a special officer at the time on duty there. The assault and battery grew out of a controversy between the plaintiff and the ticket seller. It was a part of the special officer's duty to maintain order in the establishment and the ticket seller had demanded the arrest of the plaintiff. The court held the proprietor of the establishment liable for the act of the officer. Speaking of the character of the act, the judge, who delivered the opinion of the court, said: "Even if he were a regular patrol man, called in off the street by appellants or their agents to aid in enforcing the regulations of the theater, he would, for such purpose, be only the agent of appellants, and for his conduct as such agent, within the scope of his employment, appellants would be responsible." This view, or process of reasoning, resulted in the following conclusion in *Foster* v. *Railway Co.,* cited: "Where a special deputy sheriff, who was paid by a street-railway company, and whose duty it was to preserve order at a resort owned by the company, and ride upon the cars and prevent disturbances, assaulted a passenger on a car in assisting a conductor to eject him for non-payment of fare, the officer, in so doing, represented not the public, but his employer, and the street railway company was liable."

If, however, it does not appear that the act done was within the scope of the servant's employment, or that there was any employment or contract of service, beyond that by which the person or corporation at whose instance the appointment to the office was made bound himself to pay the officer for his services as a policeman, or that the arrest was made or the person prosecuted at the instance, or by the direction, of the person who has the appointment made, there is no liability upon such person for the act. In *Healey* v. *Lothrop,* cited, Mr. Justice Holmes, delivering the opinion of the Court, said: "If the statute had meant to make the officer the servant of the person who applies for his appointment and gives bond for his conduct, presumably it would have said so. But if it had said so, it would have insisted upon a fiction being treated as a fact. It is true that the defendant asked to have an officer appointed,

perhaps asked to have Mead appointed, and that he paid him. But he did not appoint him, could not remove him, and could not control his official conduct, which was governed by the regulations of the police commissioners and his own sense of duty as a public officer. The statute does not call the relation that of master and servant, and goes no further than to make the defendant liable upon his bond 'to the same extent' as for a servant. The words quoted imply that the officer is not one. They mean to the same extent as in another case which does not exist." In *Tyson* v. *Bauland Co.,* cited, the arrest was made in the store of a company that had requested the appointment of the officer and paid him for his services, on a charge of theft in the store by a customer, and, it not appearing that the company had directed the arrest to be made, or the plaintiff to be prosecuted, although a floor-walker had brought the loss to the attention of the officer, the court held that the trial court should have directed a verdict for the defendant. The subject of the alleged theft was not goods or property of the store, but money of another customer who happened to be in the store at the time. In *Smith* v. *Southeastern Ry. Co.,* L. R. 5 C. P. 640, there had been a controversy between railway servants and the plaintiff. Incidentally a special officer, employed and paid by the company, assaulted the plaintiff and others. After the struggle was over, the special officer gave the plaintiff into custody. The court held the company not liable, because the act of giving him into custody was beyond the scope of the servant's employment. One of the rules of the company said any officer or servant, sworn as a constable for the district or place where he was on duty, might take into custody any one whom he saw commit an assault upon another at any of its stations, for the purpose of putting an end to any fight or affray, but not if the affray had come to an end. It appeared from the evidence of the plaintiff that he was not given into custody until after the fight had ended; and the court said: "We are disposed to draw the inference in fact that Antonio in giving the plaintiff into custody was not acting within the scope of his employment by the company, or on behalf of, or for the benefit of the company." Agreeably to this, the court said in *Dickson* v. *Waldron,* cited: "If, however, after entering

the theater, he (the officer) should discover appellee in the act of violating a criminal law of the state or a penal ordinance of the city, and should proceed to arrest him for it, such act of arrest would be that of a police officer. And if such arrest were made on the officer's own motion, without direction, express or implied, on the part of the appellants, then the appellants would not be responsible."

In view of these precedents and principles, we are of the opinion that the railway company is not liable to the plaintiff for the injuries inflicted upon him. He was not arrested or prosecuted for any act, respecting the railway company or its property. The offense with which he was charged was an act done, respecting the wife of the prosecuting officer, and did not in any way involve any right of the company. That it was done upon the premises of the railway company is, in our opinion, immaterial. The motive of the arrest, assault and prosecution clearly appears to have been either vindication of the law, or a desire, on the part of the officer, to avenge the insult to his wife or to comply with her wishes, and, in none of these aspects of the case, would the company be responsible for the acts, however unjustifiable they may have been. Nor is it material that the plaintiff had a return ticket, was lawfully at the station awaiting a train and was not carried by the railway company. According to the evidence, his losses and injuries were all caused by Downey, not the railway company.

Perceiving no error in the judgment, we affirm it, with costs and damages.

*Affirmed.*