# CHARLESTON.

STATE EX REL. JEAN W. SMITH *v.* JAMES H. HALL, SHERIFF.

Submitted September 5, 1923.    Decided September 11, 1923.

1. MANDAMUS—*Mandamus to Enforce Payment by Sheriff of Judgment Against Board of Education in Nature of Execution.*

   A proceeding by mandamus to enforce the payment by the sheriff of a judgment against a board of education is in the nature of an execution. · (p. 405).

2. JUDGMENT—*Judgment, Regular on Face, Against Board of Education Cannot be Impeached Collaterally in Mandamus, on Ground That it Was Entered by Consent of Board, Which Had Valid Defense.*

A judgment, regular upon its face, rendered against a board of education by a justice having jurisdiction of the subject matter and the parties, can not be impeached collaterally in proceedings for a writ of mandamus to enforce payment, on the ground that it was entered by consent of the officers of the board which had a valid defense. Such defense to the mandamus proceedings amounts to a collateral attack upon the judgment. (p. 405).

3. SAME—*Fact That Payment of Judgments in Favor of Teacher Would Exhaust Board of Education's Fund Held Not Defense to Mandamus to Enforce Payment.*

A teacher, under contract with a board of education, completes part of the school term for which she is employed and the board discharges or attempts to discharge her; her successor is then employed, who completes the school term. The county financial secretary refuses to countersign the salary orders issued by the board to the successor, who then obtains judgments against the board for the amounts of her salary. She thereupon applies to this court for a writ of mandamus to require the sheriff to pay her judgments out of the teachers' fund of the board. The judgments are valid claims against the teachers' fund, so long as they remain unreversed and unsatisfied; and that their payment by the sheriff would exhaust the fund in his hands, and not leave sufficient moneys in said fund to pay the former teacher's claims, if adjudged valid, is no defense to the mandamus proceedings. (p. 406).

4. SCHOOLS AND SCHOOL DISTRICTS—*Sheriff Cannot Legally Pay Judgment Against Board of Education Except on Order Thereof; Certified Copy of Judgment or Execution Thereon not Sufficient Warrant for Payment of Judgment by Sheriff Against Board of Education.*

The sheriff can not legally pay a judgment against a board of education, out of funds of the board, except upon an order from the board. A certified copy of the judgment or of an execution issued thereon is not a sufficient warrant for payment. (p. 407).

Petition for mandamus by the State, on the relation of Jean W. Smith, against James H. Hall, sheriff.

                                        *Writ refused.*

*Law & McCue,* for relator.

*R. F. Kidd* and *J. D. Jones,* for respondent.

MEREDITH, JUDGE:

Jean W. Smith applies to this court for a writ of mandamus to compel James H. Hall, the sheriff of Gilmer County, and as such the treasurer of the board of education of Glenville District thereof, to pay off and discharge three judgments obtained by her before a justice against the board of education of said district. These judgments, amounting, with the costs, to $658.15, were recovered by petitioner in the months of March, May and June, 1923, and represented the amount of money alleged to be due her for services rendered as a teacher in the Sand Fork High School of Glenville District at the rate of $150 per month.

The petition alleges the issuance of the salary orders by the board of education, and their non-payment; the rendition of the judgments thereon; the issuance of execution orders, and their return "not satisfied" by the constable in whose hands they were placed; and particularly alleges that there is, and was at the time the executions were presented to the respondent for payment, a sufficient amount of money in the Teachers' Fund in his hands to satisfy the petitioner's claim for salary.

Additional averments are that petitioner is informed and believes that the Board of Education has done all in its power to persuade respondent to pay the judgments, and that the board, recognizing the merit of her claims, made no appearance in the actions brought by her in the justice's court, where the judgments were rendered.

Petitioner files as exhibits transcripts of the judgments recovered before the justice, and a copy of the financial statement of the superintendent of schools of the district for the month ending May 31, 1923. This statement showed that the balance in the high school teachers' fund on that date was $1223.27, a sum more than sufficient to pay petitioner's salary claim.

Although averring that he denies the allegations of the petition, respondent in his return substantially admits the essential facts relied upon by petitioner. He admits the hiring of

petitioner by the school board, the rendering of the service, the issuance of the salary orders, not countersigned by the financial secretary, the judgments, and that there are sufficient funds in his hands to satisfy petitioner's demands.

While admitting that the services were rendered, however, the contention is that they were not legally rendered; and while admitting that the judgments were obtained, he contends they were secured through the collusive acts of the parties to the proceedings, and that for these reasons the board is not bound to make satisfaction. To sustain these positions, respondent reviews the circumstances which gave rise to the controversy, and which we must briefly notice.

It seems that in September, 1922, Golden J. Stump was employed as the teacher in Sand Fork High School for the school year, the contract with her being the regular teacher's contract prepared by the State Department of Schools. Miss Stump was retained under the contract until February, 1923, at which time, owing to some dissatisfaction with her services, the board required her resignation. Respondent alleges that her dismissal was not regular or legal, and that for this reason there was no legal vacancy in the position of teacher which could properly be filled by petitioner or any other person.

Whatever may be the fact as to this, prior to the final action by the board relative to the hearing of the charges preferred against her, Miss Stump secured a temporary injunction from the circuit court of Gilmer county restraining any further proceedings, which injunction seems to be still in effect, and instituted an action in that court to recover $762.50, the balance due her under her contract with the board. This brings to mind the second objection raised by respondent to the satisfaction of petitioner's judgments, that is, that while there may be sufficient funds in his hands to pay petitioner's claims, there are not sufficient funds to pay both hers and the prior obligations of the board, meaning the claim of Miss Stump, should she prevail in her action in the circuit court.

The point most strongly urged, however, concerns the validity of the judgments. It is alleged that although the board of education issued petitioner's salary orders, they were irregular and illegal, and the county superintendent, upon the advice of the State Department of Schools, refused to counter-

sign them until the rights of Miss Stump should be finally settled. This was also the position of the president of the board, who, it is alleged, repudiated the affixing of his name thereto by the secretary. It is averred further, however, that the two remaining members of the board colluded with petitioner to secure the payment of the orders, and that to accomplish this end they caused the actions to be brought before L. D. Taylor, a justice of the county. Fraudulently conspiring to enter no defenses in the proceedings, the two members made no appearance in behalf of the board, and further than that, notified C. F. Freeman, the newly appointed president of the board, that no defense would be necessary or proper. These circumstances, respondent urges, render the judgments against the board of no legal effect, and justify his refusal to honor petitioner's claims for salary.

From this statement, we find that respondent makes or attempts to make two defenses to the writ:

First, that the judgments were obtained by fraud or collusion.

Second, that if he is required to pay these judgments out of the teachers' fund for Glenville district, and the claim of Miss Stump should be hereafter adjudged to be a valid claim, it would be a claim against the same fund, and there would not be sufficient funds in his hands to pay both claims.

As to the first contention, the allegations of fraud and collusion are not clearly and specifically pleaded, the statements are too general. The most that is averred is that she and two members and the secretary of the board agreed that no defense should be made to the suits. The officers knew of the pending suits. The president, C. F. Freeman, who succeeded J. A. Radcliff, resigned, was advised by the secretary when one of the cases would be tried. True, he told him the board was not going to make any defense and that he need not attend; the president demurred to this course, but he did not attend or make any defense. He says in his reply to the secretary that he does not approve the action of the board, but in effect, that the petitioner has taught a good school, has earned her money and ought to be paid. The board thought she ought to be paid. We do not consider their failure to defend these actions under the circumstances, when they honestly

thought the board owed her the money and that she ought to be paid, fraudulent; nor that their agreement among themselves that there would be no defense made amounted to fraudulent collusion.

But can these judgments be attacked in this way? The justice who rendered them had jurisdiction of the subject matter and the parties. The defendant, board of education, was regularly served with process. The proceedings before the justice appear, from the transcripts filed, in all respects, to be regular. The fact that the defendant suffered them to be entered by default in no way affects their finality. No appeal was taken; hence, until set aside by some appropriate proceeding, they are valid and binding, and are not open to collateral attack. But is the present a collateral attack? Undoubtedly so. Mandamus to enforce the payment of a judgment is in the nature of an execution. It is a means provided by law to enforce the judgment, other than by the usual method of levy and sale of property or sale in the ordinary creditors' suit. Public property can not be seized or sold for private debts; hence mandamus may be resorted to to require the officer, holding the public funds properly applicable to the payment of the judgment, to satisfy it out of the funds in his hands. Petitioner is trying to enforce her judgments. "A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding, whether it be a direct action on the judgment, or on a note given in satisfaction of the judgment, or a proceeding to revive the judgment, or proceeding supplementary to execution, or a bill in equity in aid of execution or to enforce the lien of the judgment, or an action of ejectment, or a proceeding by mandamus to compel the levy and collection of a tax to provide funds for the payment of the judgment, the debtor being a municipal corporation." 28 Cyc. 1064.

In *Mayor* v. *United States,* 104 Fed. 113, 43 C. C. A. 429, it was held: "A judgment against a city, rendered by a federal court having jurisdiction, when such judgment is not void on its face, can not be impeached collaterally in proceedings for a writ of mandamus to enforce payment which in the federal courts is in the nature of an execution, on the

ground that it was entered by consent of the officers of the city which had a valid defense.''.

There are many authorities to the same effect, among them: *Wells* v. *Town of Mason,* 23 W. Va. 456; *Board of Rock Island Co.* v. *United States,* 4 Wall. (U. S.) 435, 18 Law ed. 419; *Ralls County Court v. United States,* 105 U. S. 733; *Sherman* v. *Langham,* (Tex.) 39 L. R. A. 258; *Edmundson* v. *Independent School District,* 98 Ia. 639, 67 N. W. 671, 60 A. S. R. 224; See also: *State* v. *Davis,* 74 W. Va. 261, 82 S. E. 525. It therefore follows that respondent can not defend against the issuance of the writ by asserting that the judgments were obtained by fraud or collusion. There is no claim that jurisdiction was obtained in that way.

His second objection is equally unfounded. Miss Stump's claim is not yet adjudicated; Miss Smith's claims are. They are binding debts against this very fund in respondent's hands. Must petitioner await for payment until the court shall have determined the right of Miss Stump? We think not. In the recent case of State ex rel. *Sprague* v. *Greenbrier County Court,* 93 W. Va. 481, 117 S. E. 135, where the county court refused to pay the salary of a prohibition officer, who was employed by the prosecuting attorney under authority from the circuit court, on the ground that his salary had not been included in the preceding estimate and levy, and that the general county fund might be exhausted before the end of the fiscal year by the payment of the fixed charges thereon, we held that the salary of the prohibition officer was of equal dignity and priority to salaries of other county officers and that so long as the general county fund had a balance, the prohibition officer's salary, when properly approved, should be paid. And so here. It may be that the board in this instance may be compelled to pay both parties. What we say here in that respect should not and will not, of course, affect the rights of Miss Stump. If it shall be found that Miss Stump is entitled to payment, a way is provided to enforce payment, though the teachers' fund out of which payment is to be made be exhausted by the payment of the judgments in favor of Miss Smith. There are now funds in respondent's hands with which to pay petitioner, hence if this was the only matter in the way, the writ would issue.

But a matter overlooked by the counsel for the parties bars relief here now. Under the law as it now stands, the sheriff can not legally pay a judgment against a board of education, except upon an order from the board. A certified copy of the judgment or an execution issued thereon is not sufficient warrant. Section 186, chapter 45, Barnes' Code, 1923, provides:

"He shall keep accounts with the boards of education of the various districts and independent districts of the money belonging to the several funds, as provided by law, and shall credit every receipt and charge every disbursement to the fund to which it belongs. He shall pay out no money except upon orders of the respective boards specifying the amount to be paid, the purpose for which paid and the fund to which it is to be charged, signed by the president and secretary and countersigned by the county financial secretary, or by the president and one other member, as prescribed in section ninety-three of this act, and countersigned by the county financial secretary."

Section 187 provides for the sheriff's annual settlements with the board; section 188 says that "He shall be credited in such settlements with all orders paid and produced by him, if found to be correct by the board of education, and he shall receive *no other credits,* except his commission as hereinafter provided." The change in the statute was first made in sections 138 and 140, chapter 62, Acts 1913; these were carried by subsequent legislation into the present school code. Prior to this amendment, the sheriff could pay out moneys of the board "upon a certified copy of a judgment or a decree of a court or justice against the said board for a sum of money therein specified," and receive credit therefor in his settlement. Code, 1906, ch. 45, § 46. But not so now. We are not advised why this change was made, unless to insure a more careful accounting system by boards of education, but the law stands that way, and, of course, must be obeyed.

Petitioner should obtain orders from the board for the payment of these judgments, which, we have no doubt, the officers will properly execute and countersign. If they refuse

to issue and countersign them, or the sheriff refuses to pay them, when presented, an appropriate remedy is at hand.

*Writ refused.*