STATE *ex rel.* JAMES L. GILES, *etc.*

*v.*

R. L. BONAR, SUPERINTENDENT OF THE DEPARTMENT OF PUBLIC SAFETY OF WEST VIRGINIA

(No. 13090)

Submitted October 5, 1971.   Decided November 16, 1971.

*Preiser, Greene, Hunt & Wilson, W. Dale Greene,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *Thomas P. O'Brien, Jr.,* Assistant Attorney General, for respondent.

CALHOUN, JUDGE:

In this proceeding in mandamus instituted in this Court, James L. Giles, as the petitioner, seeks to require R. L. Bonar, Superintendent of the West Virginia Department of Public Safety, as the respondent, to issue a requisition directed to the State Auditor for the payment to the petitioner of the sum of $6,117.53, which sum he alleges is the proper amount of overtime compensation earned by him while he was previously employed as a member of the Department of Public Safety, which hereafter in this opinion may be referred to merely as the Department.

The basic question presented for decision is whether members of the Department, who are commonly referred to as state police, are covered by and entitled to the benefits of the minimum wages and maximum hours provisions of Article 5C of Chapter 21 of Code, 1931, as amended. Stated more precisely, the question presented for decision is whether, pursuant to these statutory provisions, a member of the Department is entitled to be paid at a rate not less than one and one-half his regular rate of compensation for all the time he is engaged in his employment by the Department for a "workweek" in excess of forty-eight hours.

The case was submitted for decision upon the mandamus petition; upon an answer and a demurrer to the petition filed by and in behalf of the respondent; upon a replication filed by the petitioner to the answer of the respondent; upon a paper filed by and in behalf of the petitioner which is designated as a replication to the respondent's demurrer; upon a deposition of a witness; and upon briefs and oral argument of counsel for the respective parties.

The petitioner undertakes to prosecute the mandamus proceeding on his own behalf and also on behalf of and for the benefit of all other persons similarly situated who were members of the Department prior to November 24, 1970, upon which date the petitioner, while holding the rank of trooper, was discharged from his employment as a member of the Department.

In his mandamus petition, the petitioner alleged that, while employed by the Department with the rank of trooper, he "worked numerous work weeks longer than 48 hours" and that he was not paid "any additional sum for those work weeks exceeding 48 hours." He further alleged in his mandamus petition that, as a member of the Department, he was entitled to the benefit of the minimum wages and maximum hours provisions of Article 5C of Chapter 21 of Code, 1931, as amended, which, for the sake of convenience, may be referred to hereinafter in this opinion as the Wage and Hour Law.

By his answer to the mandamus petition, the respondent admitted that the petitioner, while a member of the Department, worked some workweeks in excess of forty-eight hours and that he was not paid any overtime compensation, but the respondent denied that the petitioner is entitled to receive any sum as overtime compensation. The respondent alleged affirmatively that members of the Department are not entitled to the benefit of the provisions of Article 5C of Chapter 21, Code, 1931, as amended; that members of the Department "are public officers, not employees," within the meaning of these statutory provisions; and that all members of the Department are "specifically excluded" from the benefit of the statutory provisions in question "by reason of being executives and administrators" as defined in the Wage and Hour Law. In *Haynes* v. *Commonwealth*, 104 Va. 854, 52 S.E. 358, it was held that a policeman was an "executive officer" within the meaning of a bribery statute which was involved in that case. The demurrer of the respondent asserted, by

way of defense, essentially the same legal propositions which were asserted in the answer.

In support of the allegations of his mandamus petition, the petitioner took and duly filed the deposition of Sergeant S. S. Satterfield, a member of the Department who occupied the position of chief accountant in the accounting division of the Department. His deposition was taken for the purpose of submitting certain computations which form the basis of the petitioner's claim of overtime compensation. On the basis of certain information supplied to Sergeant Satterfield, which was alleged to represent the time the petitioner worked as a trooper for workweeks in excess of forty-eight hours during the period of time in question, Sergeant Satterfield arrived at the sum of $6,139.23 as the overtime compensation to which the petitioner was entitled, pursuant to the petitioner's contention. The brief of counsel for the petitioner states that the amount actually claimed is $6,117.53. The computations made by Sergeant Satterfield did not represent his contention or an expression of his belief that the petitioner, as a member of the Department, was entitled to any sum as overtime compensation. Sergeant Satterfield testified that his computations "reflect the period from May 4, 1969, up through and including November 22, 1970." The mandamus petition was filed in the office of the Clerk of this Court on May 3, 1971.

Counsel for the respondent assert that payment by the Department of the sum demanded by the petitioner in this proceeding would constitute a violation of the provisions of Code, 1931, 12-3-17, as amended, which provides, generally speaking, that it "shall be unlawful for any state board, commission, officer or employee: * * * (2) to authorize or to pay any account or bill incurred during any fiscal year out of the appropriation for the following year, * * *." Counsel for the respondent assert additionally that it would be unlawful for him or for the Department to pay the sum demanded by the petitioner because of the provisions of Code, 1931, 12-3-12, as amended, a portion

of which provisions are as follows: "Every appropriation which is payable out of the general revenue, * * * shall be deemed to have expired at the end of the year for which it is made, and no *warrant* shall thereafter be issued upon it: * * *." (Italics supplied.) See *State ex rel. Henson* v. *Gore,* 151 W.Va. 97, 150 S.E.2d 575. In that connection, counsel for the petitioner assert that he does not seek to require the issuance of a "warrant" but that rather he seeks merely to require the issuance by the respondent of a requisition directed to the State Auditor.

Counsel for the respondent assert that, for reasons previously stated in this opinion, an award of a writ of mandamus in this case would require the performance of an unlawful act and also the performance of a vain and useless act. In the light of these contentions, counsel for the petitioner assert, as we understand their contentions made in oral argument, that issuance of a requisition by the respondent, directed to the State Auditor, might, at least, afford to the petitioner a proper basis for asserting a claim before the State Court of Claims. Without considering the merits of the contentions thus made by counsel for the respective parties, we deem it proper to proceed directly to a decision of the basic question whether members of the Department are covered by and entitled to the benefits of the Wage and Hour Law.

The Wage and Hour Law involved in this case, enacted in 1966 and amended in 1971, is designated as Article 5C of Chapter 21, Code, 1931, as amended. Reference in this opinion will be made to the several sections of Article 5C, as amended. A portion of Section 3 is as follows:

"(a) On and after January one, one thousand nine hundred sixty-seven, no employer shall employ any of his employees for a workweek longer than forty-eight hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 1 contains the following definitions:

"(c) 'Wage' means compensation due an employee by reason of his employment.

"(d) 'Employ' means to hire or permit to work.

"(e) 'Employer' includes the State of West Virginia, its agencies, departments and all its political subdivisions, any individual, partnership, association, public or private corporation, or any person or group of persons acting directly or indirectly in the interest of any employer in relation to an employee; and who employs during any calendar week six or more employees as herein defined *in any one separate, distinct and permanent location or business establishment: * * *.* (Italics supplied.)

"(f) 'Employee' includes any individual employed by an employer but *shall not include: * * * (6) any individual employed in a bona fide professional, executive or administrative capacity; * * *.* (Italics supplied.)

"(g) 'Workweek' means a regularly recurring period of one hundred sixty-eight hours in the form of seven consecutive twenty-four-hour periods, need not coincide with the calendar week, and may begin any day of the calendar week and any hour of any day."

We are of the opinion that the language of the Wage and Hour Law, when considered in its entirety, does not extend the benefits thereof to members of the West Virginia Department of Public Safety. It is our opinion that persons thus employed are public officers as distinguished from mere employees.

Counsel for the petitioner asserted in oral argument that the petitioner, while employed by the Department, was an employee within the meaning of the statutes in question even though at the same time he occupied a position as a public officer. Any public official or any public officer is also an "employee" in the sense that all public officials and public officers are employed and paid by some branch or department of government, whether it be federal, state, county, municipal or otherwise.

Section 8 of Article IV of the Constitution of West Virginia is as follows:

"The legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

The constitutional provision quoted immediately above, clearly relates to creation by general law of "public officers and agents" in categories not created by the Constitution itself. *Ice* v. *Marion County Court,* 40 W.Va. 118, 121, 20 S.E. 809, 810. The same constitutional provision necessarily implies authority in the legislature to create positions of public officers and expressly authorizes the legislature to prescribe the powers, duties and compensation of persons holding such offices and the manner in which they shall be appointed and removed. The legislature, pursuant to the constitutional provision, had the right and power to create the public office of state tax commissioner. *Blue* v. *Smith,* 69 W.Va. 761, pt. 1 syl., 72 S.E. 1038.

In *State ex rel. Key* v. *Bond,* 94 W.Va. 255, 118 S.E. 276, the Court discussed the distinction between a public officer and a public agent or a public employee. The first point of the syllabus in that case is as follows: "Generally speaking, a public office is a position created by law, with duties cast upon the incumbent which involve an exercise of some portion of soverign power and in which the public is concerned, continuing in their nature, and not merely occasional or intermittent. It is this sense in which the term is used in section 8, article IV of the Constitution." The question in that case was whether a person employed as "chief clerk" in the office of the Secretary of State was a public officer. In holding that the person thus employed was a mere employee, rather than a public officer, the Court stated (94 W.Va. 255, 260-61, 118 S.E. 276, 279):

"Now it can not be said that because the petitioner, under the direction of the Secretary of State, affixes the Great Seal of the State to official documents, this is her act and that therefore she exercises a portion of the sovereign power of the state. She exercises no independent power or authority. What she does she does not in her own name and by virtue of her own authority, but in his name. Her duties are not prescribed by law; they are prescribed by the Secretary of State, and he may change them when he sees fit. She takes no oath; gives no bond; has no tenure fixed by law; hence we must hold that she is not a public officer."

The following is the fifth point of the syllabus in *State ex rel. Carson* v. *Wood,* 154 W.Va. 397, 175 S.E.2d 482:

"Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign."

The Department of Public Safety was created by Chapter 12, Acts of the Legislature, Extraordinary Session, 1919. This statutory enactment, in its amended form, is designated as Article 2 of Chapter 15, Code, 1931, as amended. Hereafter in this opinion references will be made to the several sections of Article 2.

Section 2 of Article 2 provides that the superintendent of the Department shall appoint "such civilian employees" as may be necessary. Section 3 provides: "Members of the department shall receive salaries, as follows: * * *." Thereinafter provision is made for specific annual salaries to be paid to members of the Department in amounts depending upon the official rank held within the Department, the lowest rank being that of trooper. We believe it is worthy of note that, since the effective date of the enactment of the Wage and Hour Law in 1966, the annual

salaries of members of the Department have been increased to definitely specified amounts by statutory amendments made in 1967, 1969 and 1971.

Section 3 of Article 2 provides that each member of the Department shall execute a bond, but "civilian employees" are exempt from that requirement. Section 6 provides that no member of the Department "may withdraw or resign from the department without the consent of the superintendent." The same section provides that, if any member "shall withdraw, resign or refuse to discharge the duties imposed upon him by this article," he shall be guilty of a misdemeanor and, upon conviction, shall be subject to the criminal penalty therein prescribed. Section 11 confers upon all members of the Department power, anywhere within the state, to make arrests of any and all persons charged with violation of any law of this state or of the United States and to exercise other powers constituting functions of "the sovereign." Section 13 requires each member of the Department to take and subscribe to an oath in a form substantially identical with the form of the oath required, by Section 5 of Article IV of the Constitution of West Virginia, to be made by every person "elected or appointed to any office." Code, 1931, 6-1-3, as amended, provides that every person elected or appointed "to any office" in this state, subject to certain exceptions therein enumerated, "shall take the oath or affirmation" prescribed by the constitutional provision to which we have referred immediately above.

Section 19 of Article 2 provides that the superintendent of the Department may suspend or remove from service any member of the Department for specified causes therein enumerated. Section 20 provides for the appointment of a board of commissioners and provides further that charges in writing may be preferred before that body against any member of the Department; that a copy of the charges shall be served upon the accused member; and that he shall be entitled to a hearing. Section 21 makes provision for "a trial" upon charges preferred against a member of the Department.

Sections 27 through 28k make extensive provisions for retirement of members of the Department and for the benefits payable to dependents of deceased members of the Department. These provisions are wholly separate, distinct and different from the provisions of the West Virginia Public Employees Retirement Act contained in Article 10 of Chapter 5, Code, 1931, as amended.

In numerous cases, in which the question was directly presented for decision, it has been held that police are public officers as distinguished from mere public employees. *Marlow* v. *Mayor & Aldermen of City of Savannah*, 28 Ga. App. 368, 110 S.E. 923; *State* v. *Hord*, 264 N.C. 149, 141 S.E.2d 241 and numerous cases cited therein; *Mann* v. *City of Lynchburg*, 129 Va. 453, 106 S.E. 371; *Sherry* v. *Lumpkin*, 127 Va. 116, 102 S.E. 658; *Burch* v. *Hardwicke*, 64 Va. (30 Gratt.) 24. See also *National Labor Relations Board* v. *E. C. Atkins & Co.*, 331 U.S. 398, 429; *McKain* v. *Baltimore & Ohio R. R. Co.*, 65 W.Va. 233, 64 S.E. 18.

For reasons stated in this opinion, the Court holds that the members of the West Virginia Department of Public Safety are public officers as distinguished from mere public employees and that, therefore, they are not covered by and entitled to the benefits of the minimum wages and maximum hours provisions of Article 5C of Chapter 21, Code 1931, as amended; and accordingly the writ of mandamus as prayed for is denied.

*Writ denied.*