STATE *ex rel.* GERALD L. CROSIER,

*et al., relators*

*v.*

DAVID C. CALLAGHAN, *director*

DEPT. OF NATURAL RESOURCES OF W.VA., *respondent*

(No. 13853)

Decided May 17, 1977.

*James M. Sprouse,* for relators.

*Chauncey H. Browning,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *Gerald R. Lacy,* Assistant Attorney General, for respondents.

HARSHBARGER, JUSTICE:

Gerald L. Crosier is employed by the West Virginia Department of Natural Resources as a conservation officer. He and one hundred fourteen conservation officers bring this mandamus action to compel the director of the department to pay them for the hours worked in excess of 42 hours per week.

Overtime compensation is governed by the West Virginia wage and hour law, *W. Va. Code,* 21-5C-1 *et seq.* It provides that all employees covered by the Act, including state employees, shall be paid for hours they work exceeding 42 hours per week, at time-and-a-half.

The definition of "employee" set out in *W. Va. Code,* 21-5C-1(f) is:

> "(f) "Employee" includes any individual employed by an employer but shall not include: (1) Any individual employed by the United States; (2) any individual engaged in the activities of an educational, charitable, religious, fraternal or nonprofit organization where the employer-employee relationship does not in fact exist, or where the services rendered to such organizations are on a voluntary basis; (3) newsboys, shoeshine boys, golf caddies, pin boys and pin chasers in bowling lanes; (4) traveling salesmen and outside salesmen; (5) services performed by an individual in the employ of his parent, son, daughter or spouse; (6) any individual employed in a bona fide professional, executive or administrative capacity; (7) any person whose employ-

ment is for the purpose of on-the-job training; (8) any person having a physical or mental handicap so severe as to prevent his employment or employment training in any training or employment facility other than a nonprofit sheltered workshop; (9) any individual employed in a boys or girls summer camp; (10) any person sixty-two years of age or over who receives old-age or survivors benefits from the social security administration; (11) any individual employed in agriculture as the word agriculture is defined in the Fair Labor Standards Act of 1938, as amended; (12) any individual employed as a fire fighter by the State or agency thereof; (13) ushers in theaters; (14) any individual employed on a part-time basis who is a student in any recognized school or college; (15) any individual employed by a local or interurban motorbus carrier; (16) so far as the maximum hours and overtime compensation provisions of this article are concerned, any salesman, partsman or mechanic primarily engaged in selling or servicing automobiles, trailers, trucks, farm implements, or aircraft if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers; (17) any employee with respect to whom the United States department of transportation has statutory authority to establish qualifications and maximum hours of service."

There is no lack of specificity in this list of excluded occupations with the exception of those denoted "professional, executive or administrative."

One would therefore conclude that if the Legislature intended to exclude conservation officers (who were not professional, executive or administrative employees) from the ambit of the law, it would have listed them along with employees of the United States, newsboys, shoeshine boys, golf caddies, pin boys and pin chasers, traveling salesmen and outside salesmen, on-the-job trainees, sheltered workshop workers, summer camp em-

ployees, social security recipients, agriculture workers, state firemen, theatre ushers, college students, local or interurban bus employees, partsmen or mechanics selling or servicing motor vehicles, farm implements or aircraft; or people working in U.S. department of transportation—controlled occupations. *Expressio unis est exclusio alterious.*

However, this Court by its decision in *State ex rel. Giles v. Bonar*, 155 W. Va. 421, 184 S.E.2d 639 (1971), speaking through Judge Calhoun, held that there are workers not covered by the wage and hour law in addition to those specifically excluded by its terms. The Court held that people who were "officers" were not covered, that state policemen ". . . are public officers as distinguished from mere employees," and that if one were a public officer one could not be an employee. It cited *State ex rel. Carson v. Wood*, 154 W. Va. 397, 175 S.E.2d 482 (1970) as establishing these criteria for determining officialdom:

"1. Is the position created by law?

"2. Is the position designated an office?

"3. Are the qualifications of the appointee prescribed by law?

"4. Are duties, tenure, salary, bond and oath prescribed or required?

"5. Has one occupying the position been constituted a representative of the sovereign?"

The Court in *Giles* avoided the wage and hour law simply by styling everyone who by any stretch satisfied the criteria, an officer; and then by saying officers cannot be employees—and therefore are not affected by the wage and hour law.

Although the decision quoted the Act, and *emphasized* the administrative, professional, and executive exclusion, the holding did not turn upon a finding that state policemen were executives, administrators or professionals.

In *Carson*, one Luther Carson was "Director of Office Services" of the West Virginia State Road Commission and was indicted for violating *W. Va. Code* 61-5-5 which prohibits an executive or ministerial officer of the State from receiving, demanding or accepting a bribe. The Court prohibited his trial because it determined he was not an executive or ministerial officer of the State.

The Court majority analyzed our Constitution and statutes, and decided that officers referred to in the bribery law were only those whose offices were created by the Constitution or by statute. It found no Constitutional or statutory provision establishing a "Director of Office Services." And it reasoned that "... it is clear that the legislature intended thereafter that when an office was 'created by law' and filled by appointment by the Governor with the advice and consent of the Senate that such officer should be subject to the bribery provision of that section. 154 W. Va. at 411.

The Court appeared to be saying that people who hold *offices* as distinguished from *jobs* were those intended to be covered by the bribery statute. It further acknowledged that "No very satisfactory and comprehensive distinction between an 'officer' and an 'employee' appears in the decisions of our supreme court or in the decisions of other courts. Each case must be determined largely on its own merits." 154 W. Va. at 410.

The dissent by Judge Calhoun recognized that the term "public officer" is vague, at best, and must be interpreted within the context of each statute in which it is employed. Citing 67 C.J.S. *Officers* § 2, he noted:

> "When the term is used in a statute its meaning must be determined by a construction, not only of the particular section in which it is used, but by the statute as a whole and by other statutes of which the particular one forms a part as being in pari materia; and, also, constitutional provisions should be looked to as aids in deciding the question. Furthermore, *the wording of particular statutes may be such that the same position may*

*be held to be an office for one purpose and not for another."* (Emphasis added.) 154 W. Va. at 421.

It is interesting to observe that Judge Calhoun, writing for the Court in *Giles* in 1971, stated that if one were a public officer one could not be an employee; but his dissent in *Carson* in 1970 noted that one might be an officer for one purpose and not for another.

We believe he was nearly correct in *Carson*; and to the extent that *Giles* categorically denies wage and hour protections to any employee who is clothed with some official character or responsibility, we overrule that holding.

We find nothing in the wage and hour law that excludes "officers" as such, unless they also happen to be employed within one of the categories enumerated.

Therefore, we must look to the law to find if these officers are excluded by its terms or by the regulations promulgated by its authority. Of the excluded categories, only those styled "professional, administrative or executive" could possibly apply.

The West Virginia Minimum Wage and Maximum Hours Standards Regulations (February 1, 1977), define the terms in question:

301-6 PROFESSIONAL, ADMINISTRATIVE or EXECUTIVE EMPLOYEE

Any individual employed in a bona fide professional, executive or administrative capacity shall be recorded as exempt if he fulfills the duties of such capacities as defined thusly:

(a) A professional employee is an individual whose primary duty consists of the performance of work:

(1) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education

and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes, or

(2) Original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training) and the result of which depends primarily on the invention, imagination, or talent of the employee; and

(3) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(4) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in a given period of time.

(b) An executive employee is an individual whose primary duty consists of the management of an enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and

(1) Who customarily and regularly directs the work of two or more employees therein; and

(2) who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion and any other change of status of other employees will be given particular weight;

(3) Who customarily and regularly exercises discretionary powers.

(c) An administrative employee is an individual whose primary duty consists of the performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers and

(1) Who customarily and regularly exercises discretion and independent judgment; and

(2) Who regularly and directly assists a proprietor, or an employee employed in bona fide professional, executive or administrative capacity or

(3) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(4) who executes under only general supervision special assignments and tasks, Provided, Section 301-6 (a), (b) and (c), wherein the terms bona fide professional, executive and administrative employees have been defined and qualify under the immunity only in relation to Sections 21-5C-2 and 21-5C-3 of the Act.[1]

Do conservation officers' duties and status bring them into these definitions?

The statutes which create and define the position of conservation officer repeatedly emphasize that they are under the immediate supervision and direction of the chief conservation officer. *See, W. Va. Code,* 20-1-13, 20-7-1, 20-7-4. They are authorized to enter upon private lands and waters for investigative purposes. *W. Va. Code,* 20-1-13. As employees of the Department of Natu-

---

[1] The bona fide professional, executive and administrative personnel exemption in our law is patterned after similar language in the federal Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 213(a)(1).

Congress amended the FLSA in 1974 to extend coverage to state law enforcement personnel. The United States Supreme Court, however, held those amendments to be unconstitutional in *National League of Cities v. Usery,* 426 U.S. 833, 96 S. Ct. 2465, 49 L.Ed.2d 245 (1976), on grounds not germane to the present proceeding.

Regardless of the Court's finding that the federal government's extension of coverage to state employees was constitutionally infirm, we believe the 1974 amendments are significant for two reasons. First, as a guide to statutory construction, they indicate that the terms "bona fide professional, executive and administrative" employees do not categorically encompass all levels of law enforcement personnel. Second, it is a persuasive expression by our national government that law enforcement agents are engaged in work which rightly deserves coverage and protection under the many state wage and hour laws.

ral Resources, they are entitled to merit system benefits and protection per *Code* 20-1-8. Although mandatory retirement at age 65 is prescribed by *W. Va. Code,* 20-7-2, this statute provides that they may "continue to be employed by some other division or department of state government." *W. Va. Code* 20-7-4 prescribes the powers and duties of conservation officers in detail. They are authorized to engage in environmental law enforcement and game warden activities. If all conservation officers are bona fide executives or administrators, we are at a loss to determine who they supervise or administrate. And there are absolutely no requirements for professional education or experience.

Further, we believe our Legislature did not intend that state government should be entitled to require labor by a man in behalf of the people for un-numbered hours without extra compensation for those worked by him exceeding the maximum allowed to be worked by his fellows in government and elsewhere, simply by clothing him in a uniform, affixing a shield to his breast, topping him in a campaign hat, and investing him with arms for his protection while enforcing its laws.

Our research reveals no case from any jurisdiction in the United States holding that police or conservation officers are excluded from wage and hour law coverage because they are officers.

Law enforcement officers are discussed in *City of Billings v. Smith,* 158 Mont. 197, 490 P.2d 221 (1971). The Supreme Court of Montana found that police and firemen came within the professional employee exemption of their wage and hour law. Its finding was based upon the state's prior statutory provisions regarding them and the court's interpretation of legislative intent. The court cited no administrative regulation defining "professional employee" to guide it. The respondent in this case does not contend that conservation officers are excluded under our professional employee exemption as it is defined in § 301-6 of the West Virginia Minimum Wage and Maximum Hours Standards Regulations, *supra.*

The Court of Appeals of Kentucky, however, in *Kentucky Municipal League v. Commonwealth Department of Labor*, Ky., 530 S.W.2d 198 (1975), upheld the state wage and hour law and its coverage of fire fighters and other municipal employees engaged in work of statewide concern. The issues were not raised as to whether fire fighters or policemen were excluded from the law as officials, or under the exemption for "bona fide executive, administrative, supervisory or professional" employees, Ky. Rev. Stat. § 337.010(c)(ii) (Cum.Supp. 1976). A series of opinions of the Kentucky Attorney General indicates that police officers are clearly and comprehensively covered. *See*, Ky. OAG Nos. 74-559, -602, 75-607.

We believe *State ex rel. Giles v. Bonar* injected a spurious and confusing standard into our wage and hour law. The highly artificial distinction between "public officers" and "mere employees" is without sound legal basis in wage and hour law and, for the reasons set forth herein, must be abandoned.

The State argues that petitioners have not shown a clear right in the mandamus action itself. Were this so, a writ could not issue. *State ex rel. Graney v. Simms*, 144 W. Va. 72, 105 S.E.2d 886 (1948). We do not agree. The right petitioners seek to enforce is clearly set forth in *W. Va. Code*, 21-5C-2,-3. We are not asked to enact new law absent statutory authority, or to exercise discretionary powers vested in the executive branch of government. The fact that the law has been erroneously interpreted in the past with respect to state police does not vitiate the right which the petitioner now asserts.

Likewise, we find no merit in respondent's contention that he would be precluded from complying with a writ of mandamus by virtue of *W. Va. Code*, 12-3-17[2] or because there are insufficient funds in the current fiscal

---

[2] *W. Va. Code*, 12-3-17 states in part:

Except as provided in this section, it shall be unlawful for any state board, commission, officer or employee: . . . (2) to authorize or to pay any account or bill incurred during any fiscal year out of the appropriation for the following year, unless a sufficient amount of the appropriation for the fiscal year during which the liability

appropriation to pay for overtime worked by conservation officers.

In this case, *W. Va. Code*, 12-3-17 and 21-5C-8 must be construed in pari materia. *W. Va. Code*, 12-3-17, subject to specified exceptions, prohibits any state officer or employee from authorizing or paying any account incurred during any fiscal year out of the appropriation for the following year. *W. Va. Code*, 21-5C-8, however, expressly authorizes payment of back overtime wages for two consecutive years immediately preceding an employee's action for unpaid wages. To the extent that retroactive liability for unpaid wages is incurred against an employer, it is incurred at the time liability is determined. Theoretically, an employer could fail to pay correct overtime wages for many years; his liability for two years back payment, however, is not legally incurred under *W. Va. Code*, 21-5C-8 until the employee prevails in an action to recover the money due. Thus, while work may be performed by government employees in the course of prior fiscal years, the government's liability for payment of back wages arises at the time they are found to be due.

Our reasoning is further buttressed by the observation that the definition of "employer" under the wage and hour law, *W. Va. Code*, 21-5C-1(e), specifically includes the State of West Virginia, its agencies, departments and all its political subdivisions. It follows, absent any expression contra, that the same definition of "employer" was intended in *W. Va. Code*, 21-5C-8.

We also find unpersuasive respondent's argument that mandamus does not lie because there are insufficient funds in this year's Department of Natural Resources' personal services appropriation from which to pay petitioners' overtime compensation. Nor do we believe that it is the petitioners' responsiblity to demonstrate factually that there will be an adequate surplus in this year's fiscal appropriation to cover the payment.

---

was incurred was cancelled by expiration or a sufficient amount of the appropriation remained unexpended at the end of the year.

Inherent in respondent's argument is the premise that petitioner's right to back wages is contingent upon his finding a fund from which he can be paid and then submitting a blueprint for payment to the Court that does not infringe upon designated fiscal appropriations. This is not correct when, as here, an employee is lawfully entitled to remuneration for services rendered. When there are unexpended funds in any account which may be lawfully charged with payment of this debt, whether it be from the personal services appropriation or from the general fund in the state treasury, then petitioner is entitled to mandamus directing payment of the amount due. *See, State ex rel. Bache & Co. v. Gainer*, 154 W. Va. 499, 177 S.E.2d 10 (1970); *Moran v. Amos*, 104 W. Va. 538, 140 S.E. 544 (1927); *State ex rel. Smith v. Hall*, 94 W. Va. 400, 119 S.E. 166 (1923); and *State ex rel. Sprague v. Greenbrier County Court*, 93 W. Va. 481, 117 S.E. 135 (1923).

For these reasons we find petitioners are entitled to their writ.

*Writ awarded.*