ROBERT KUCERA, *etc., et al.*

*v.*

THE CITY OF WHEELING, *etc.*

(No. 13352)

Decided March 18, 1975.

*Hostler, Logsdon & Shinaberry, Stanley M. Hostler* for appellants.

*John Marshall, III, and George B. Vieweg, III* for appellee.

CAPLAN, JUSTICE

Robert Kucera, individually and on behalf of all other persons similarly situate as paid fire fighters employed by the City of Wheeling, plaintiffs, instituted an action in the Circuit Court of Ohio County against the City of Wheeling, a municipal corporation, defendant, seeking a judgment declaring their rights to certain sums of money alleged to be due and owing them as salary. That action was instituted on December 28, 1967 and, having been extended by an appeal and a mandamus action in this Court, final judgment was entered on May 15, 1972. It is from that judgment that this appeal is prosecuted.

The minimum wage law, prescribing minimum wage and maximum hours standards for employees, was enacted by Chapter 39, Acts of the Legislature, Regular Session, 1966, now designated *W. Va. Code*, 1931, 21-5C, as amended. This act, effective January 1, 1967, requires the payment of a designated minimum hourly wage by employers and the payment of overtime compensation for hours worked in excess of forty-eight during a work week.

Upon the enactment of the aforesaid legislation the City of Wheeling refused to pay such firemen pursuant to the overtime provisions of the statute. The ground for its refusal to pay such compensation was that the plaintiffs were paid fire fighters of an agency of the state and were, therefore, exempt from the provisions of the statute by reason of *W. Va. Code*, 1931, 21-5C-1(f)(12), as amended. As a result of such refusal the plaintiffs instituted the aforesaid action seeking a declaration of their rights to the benefits of the recently enacted minimum wage law.

The Circuit Court of Ohio County entered judgment for the defendant city and the plaintiffs appealed to this

Court. In *Kucera, et al. v. City of Wheeling*, 153 W. Va. 531, 170 S.E. 2d 217 (1969), the Court reversed the judgment of the Circuit Court of Ohio County, holding that the City of Wheeling was not an agency of the state and was, therefore, subject to the requirements of the said minimum wage law in relation to wages of firemen. Upon remand the Circuit Court of Ohio County entered an order, dated April 27, 1970, declaring the method for computing overtime pay due the plaintiffs.

In the interim the City of Wheeling had passed an ordinance granting all of its employees a wage increase but withholding such raise from the firemen, pending the outcome of the case then before the Supreme Court of Appeals. That case was decided by this Court on July 15, 1969 and on December 2, 1969 the defendant city, by William S. McFadden, Chief of the Wheeling Fire Department, distributed to all personnel of the fire department a SPECIAL NOTICE, the subject of which was "Back Wages, Retroactive to July 1, 1969". Therein the chief advised the firemen as follows: "The *back pay* is available to each as an individual in accordance with the attached release. If you, as an individual, desire to obtain your *back wages* in accordance with the attached release, you can make your desire known to Mrs. Mary Warden, Secretary to the Chief. . . . You *must* appear at the office to sign the release and have it notarized." (Emphasis supplied) The release referred to in said notice is in the following form:

### RELEASE

That for and in consideration of the sum of ____ Dollars ($ ), the receipt of which is hereby acknowledged, I, ____, an employee of the Fire Department of The City of Wheeling, do hereby release and discharge The City of Wheeling from any and all claims relating to overtime compensation under West Virginia Code 21-5C-3 for that period of time from July 1, 1969 to November 1, 1969.

(Acknowledgment)

On an accompanying Statement of Earnings and Deductions, included in the record as plaintiffs' Exhibit #2, is the following notation: "Back pay raise: for the period 7-1-69 to 10-31-69 inclusive." Most of the fire fighters employed by the City of Wheeling, desiring to receive the wage increase granted by the city, effective July 1, 1969, executed the aforesaid release. Included in this group was Robert Kucera. These firefighters did receive their back wages in the amount set forth in the release agreement. The release agreement sought to "release and discharge The City of Wheeling from any and all claims relating to overtime compensation under West Virginia Code 21-5C-3 for that period of time from July 1, 1969 to November 1, 1969." It is the contention of Kucera and the other appellants that this release from overtime pay was null and void as being contrary to the public policy of the State of West Virginia as specifically provided in *W. Va. Code*, 1931, 21-5C-8, as amended.

By a memorandum dated October 31, 1969, the City Manager of the City of Wheeling notified the members of the fire department that they would be paid on the basis of a sixty hour week; that for the first forty-eight hours they would receive regular hourly pay; and for the remaining twelve hours the rate would be one and one-half times the regular hourly rate. Attached to the memorandum was a pay schedule for the department which revealed an hourly rate in excess of that required by the statute. Also revealed was the overtime rate which was one and one-half times the regular hourly rate.

It is the contention of the appellants that the method used by the city in computing overtime pay for the firemen was contrary to the requirements of *W. Va. Code*, 1931, 21-5C, as amended. Implicit in this contention is the assertion that the city erroneously established the regular hourly rate.

Two questions are presented. First, whether the release of overtime pay for the period of July 1, 1969 to November 1, 1969 is null and void; and, second, whether

the pay schedule for the firemen, formulated by the City, is contrary to the provisions of *W. Va. Code*, 1931, 21-5C, as amended.

The circuit court held that the release was not null and void as a violation of *W. Va. Code*, 1931, 21-5C-8, as amended. That court further held that the city manager had the authority under the city charter to determine and set the rate of pay for city employees; that he did so act; and, that since the hourly rate designated was in excess of that required by statute and the wage schedule did provide for the payment of time and one-half for overtime hours worked, the court had no authority to interfere. The appellants excepted to these findings and prosecuted this appeal.

Considering first the validity of the release executed by the firemen relative to overtime pay for the period of July 1, 1969 to November 1, 1969, it is pertinent to examine *W. Va. Code*, 1931, 21-5C-8, as amended. That statute reads:

> Any employer who pays an employee less than the *applicable wage rate* to which such employee is entitled under or by virtue of this article shall be liable to such employee for the unpaid wages; an agreement by an employee to work for less than the applicable wage rate is hereby declared by the legislature of West Virginia to be *against public policy* and unenforceable. (Emphasis supplied)

In addition to the public policy consideration, the appellants contend that they executed the release under duress.

Upon examination of the Special Notice alluded to above and quoted in part, it is clear that the firemen were mandated to execute a release, giving up all claim to any overtime compensation, if they desired to receive the back pay raise for the period between July 1, 1969 and November 1, 1969. If they signed the release they received the pay raise; if they did not sign, thereby refusing to relinquish their claim to overtime pay for the applicable period, they simply would not receive the

pay in the amount to which they were entitled. The increase in pay for city employees was provided for by the city. It was not required to increase such wages, but when it did, the firemen were entitled to payment of wages in accordance with the requirements of the wage and hour law, in the same manner as all other city employees. Therefore, it cannot be questioned that requiring the firemen to sign the release, in the circumstances herein described, constitutes duress.

Reasoning that *W. Va. Code*, 1931, 21-5C-8, as amended, was not intended to cover this situation, the circuit court held that the release, whereby the firemen gave up their claim to overtime pay, was valid. We disagree. We also reject as clearly untenable the contention that because the hours for which the raise was to be paid had already been worked, the amount to be received was in the nature of a gratuity.

While the City of Wheeling was under no compulsion to grant its employees a raise in pay, *State ex rel Kucera v. The City of Wheeling*, 153 W. Va. 538, 170 S.E. 2d 367 (1969), it chose to do so. When it was decided by this Court, *Kucera et al. v. City of Wheeling, supra*, that the firemen were covered by the state wage and hour law, they became entitled to the pay raise on the same basis as were other city employees. Admittedly, overtime hours were worked by the firemen during the period involved, so they were entitled to overtime pay as a part of the applicable wage rate. *See W. Va. Code*, 1931, 21-5C-3, as amended.

The Supreme Court in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945), commenting on the validity of a release for overtime pay under 29 U. S. C. § 207, the federal maximum hours law, which is similar to our law as set out in Section 3, referred to above, said that the "attempted release and waiver of rights under the Act was absolutely void." *See, Schulte v. Gangi*, 328 U. S. 108, 66 S. Ct. 925, 90 L. Ed. 1114 (1946), wherein the court noted that to allow employer and employee to compromise such matters "thwarts the public policy of minimum wages."

We adhere to the principles expressed in the above cases and hold that the releases executed by the firemen, whereby they relinquished their rights to overtime pay as a part of the applicable wage rate referred to in *W. Va. Code*, 1931, 21-5C-8, as amended, were against public policy and are null and void.

The second question presented on this appeal is whether the pay schedule formulated by the City of Wheeling for its firemen is contrary to the provisions of *W. Va. Code*, 1931, 21-5C-2 and 3, as amended. That article, of course, relates to the permissible minimum wages and maximum hours for employees.

The City of Wheeling took the position in the circuit court and persists in that position here that its city manager, acting under the authority granted by its charter, lawfully determined the pay schedule for its firemen. Section 29 of the Special Legislative Charter of the City of Wheeling (Chapter 141, Acts of Legislature, 1935), where pertinent, provides:

> Unless otherwise provided by this charter or by ordinance, the city manager shall fix the compensation for all persons in the executive and administrative services of the city, within the limits and terms of the budget.

Pursuant to that authority, Charles C. Steele, the City Manager of Wheeling, forwarded to all members of the Wheeling Fire Department a memorandum, the subject of which was "Wage Increases and Determination of Wage Rates." Therein the firemen were notified that, beginning November 1, 1969, they would be paid on the basis of a sixty hour week; that for the first forty-eight hours they would receive the regular hourly pay; and that for the remaining twelve hours the rate would be one and one-half times the regular hourly pay. Attached to the memorandum was a schedule designating an hourly rate of pay and the overtime rate. The regular rate of pay designated for the firemen by the city manager is in excess of the minimum wage provisions of our law. The pay schedule also provided for overtime pay at

the rate of one and one-half times the regular hourly rate. This is in compliance with the requirements of *W. Va. Code,* 1931, 21-5C-2 and 3, as amended.

Inasmuch as the city manager acted in accordance with the authority granted him under the city charter in "fixing the compensation" of the employed firemen and, since he did fix such compensation in accordance with the requirements of the aforementioned wage and hour statutes, due regard having been given to both the minimum wage and maximum hours provisions thereof, we are constrained to hold that the pay schedule formulated by the City of Wheeling was not contrary to the provisions of *W. Va. Code,* 1931, 21-5C-2 and 3, as amended.

Counsel for the appellant cites many cases in support of their contention that the wage and hour law was violated. An examination of those cases reveals that such cases pertain to the establishment of a regular rate of pay where no rate has been set. The city manager in this case did designate a regular hourly rate of pay, so although the cited cases may be acceptable authority for the proper method of arriving at a regular hourly rate of pay, they have no application here.

For the foregoing reasons, the judgment of the Circuit Court of Ohio County, entered on May 15, 1972, is reversed wherein it held the release executed by the firemen to be proper and enforceable and is affirmed insofar as it approved the pay schedule as formulated by the city manager.

*Reversed in part;*
*Affirmed in part.*

SPROUSE, JUSTICE, *dissenting:*

I respectfully dissent from that part of the majority opinion affirming the circuit court's approval of the pay schedule formulated by the Wheeling city manager. It is uncontroverted that the Wheeling firemen regularly work sixty-hour weeks. It is unanimously agreed that

Code, 1931, 21-5C, as amended, requires payment at a rate of one and one-half times the regular hourly rate for hours in excess of forty-eight worked each week. This dispute concerns the formula for determining the regular hourly rate.

The City of Wheeling arrived at a regular hourly rate in a manner approved by the majority as follows: The city council on June 10, 1969, by ordinance, fixed an annual salary; the city manager divided this by fifty-two, arriving at a weekly wage; he then arbitrarily determined a sixty-six hour work week, divided the weekly wage by sixty-six, arriving at a regular hourly wage. Applying this rate to the actual sixty-hour work week, firemen were paid the regular rate for the first forty-eight hours and one and one-half times that rate for the next twelve hours. The use of the artificial sixty-six hour week (dividing the weekly rate by sixty-six rather than by sixty) obviously resulted in a lower regular hourly rate. The use of this lower "regular rate" insured with mathematical certainty that the sum of straight and overtime pay equaled the annual salary set by the city council.

The majority holds that, since the Wheeling City Charter empowers the city manager ("unless otherwise provided * * * by ordinance") to fix compensation, he acted legally in fixing a basic hourly rate even though he utilized a ficticious sixty-six hour week to arrive at a final figure.

This is fallacious for two reasons. The city council, by ordinance, fixed the firemen's annual compensation. The city manager only chopped it into artificial hourly increments to circumvent the overtime requirements of Code, 21-5C. The City Charter, interpreted to permit such actions by the city manager, is not only in conflict with Code, 21-5C, but it also conflicts with Code, 1931, 8-5-10, as amended, which prescribed a maximum bi-weekly work period of one hundred twenty hours. Any conflict between a city charter provision and a state legislative statute must be resolved in favor of the legislative en-

actment. "Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State, when that power has been exercised." *Brackman's, Incorporated v. City of Huntington*, 126 W. Va. 21, 21 S.E.2d 71; *City of Huntington v. State Water Commission*, 137 W. Va. 786, 73 S.E.2d 833. The city manager's actions, violating these State statutes, could not be validated by an inconsistent city charter provision.

Code, 1931, 21-5C-3, as amended, provides that, for work over forty-eight hours each week, an employee shall be paid "one and one-half times the *regular rate*." (Emphasis supplied.) No West Virginia case has defined "regular rate." It is obvious, however, that W. Va. Code, 21-5C, is patterned after the Federal Fair Labor Standards Act of 1938, as amended by 29 U.S.C., Section 201, et seq. The Federal courts interpreting this Federal counterpart have unanimously disapproved artificial approaches such as that used by the Wheeling city manager. They have held uniformly that to calculate a regular hourly rate from annual or weekly compensation, the actual hours worked must be used. *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 199; *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419; *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37; *Seneca Coal and Coke Co. v. Lofton*, 136 F.2d 359 (10th Cir. 1943), *cert. denied* 320 U.S. 722; *Patsy Oil and Gas Co. v. Roberts*, 132 F.2d 826 (10th Cir. 1943).

The Wheeling city firemen regularly work a sixty-hour week. The city council fixed their compensation on an annual basis. This divided by fifty-two mathematically determines a weekly rate. That divided by sixty should properly determine the regular hourly rate contemplated by Code, 21-5C. The firemen should be paid that rate for the first forty-eight hours worked in each week and one and one-half times that rate for all hours in excess of forty-eight weekly.

I would reverse the judgment of the Circuit Court

which approved the pay schedule formulated by the city manager.

I am authorized to state that Justice Haden joins in this dissenting opinion.

HADEN, CHIEF JUSTICE, *dissenting*:

I respectfully dissent to the decision of the Court.

While I am in wholehearted agreement with the proposition of law stated in *syllabus* point 1., I do not believe it to be applicable to the facts of the case.

*State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 539, 170 S.E.2d 367 (1969), the second case in this litigation trilogy, recognized and held that firemen employed by the City of Wheeling were not entitled to a pay raise for fiscal year 1969-70 upon the mere approval of budgeted funds adequate to provide a pay raise in that fiscal period; for entitlement to pay raises to arise which would be enforceable in mandamus, the city manager would have had to grant, by affirmative act, a pay raise effective July 1, 1969 to the firemen. The opinion then noted that the city manager had not granted the pay raise and that the city council on June 10, 1969 further had adopted an "ordinance" which provided "that if the original *Kucera* case [the first case in this trilogy] ... were decided against the city [It was.] the pay raises for those affected thereby [the firemen, appellants herein] would not be implemented inasmuch as the budget for the fiscal year 1969-1970 would have placed upon it 'a tremendous financial burden.'" Accordingly, this Court held mandamus would not lie to compel the payment of raises effective July 1, 1969. *See, syllabus* point 3., and pp. 543-544 of Volume 153 of the West Virginia Report.

On October 31, 1969, the city manager approved a pay raise for the appellant effective November 1, 1969 and also volunteered the equivalent of a pay raise for the period of July 1 through October 31, 1969 to those firemen who chose to execute a release discharging the city

from all claims for overtime compensation under *W. Va. Code* 1931, 21-5C-3, as amended, for the period of July 1, 1969 through November 1, 1969.

*W. Va. Code* 1931, 21-5C-8, as amended, renders void and unenforceable an agreement executed by an employee covered by the State Minimum Wage Act to accept "less than the applicable wage rate to which such employee is *entitled. . . .*" (Emphasis supplied). By the second *Kucera* decision, still presumably recognized by the majority, the firemen were not entitled to a pay raise until it was granted by the city manager effective November 1, 1969. The releases should have been recognized as valid in that such did not purport to cover wage entitlements protected by the statute.

Secondly, there was little or no evidence adduced which supported a general charge that the releases in question were executed under duress. Duress must be proved by clear and convincing testimony. *Carroll v. Fetty*, 121 W. Va. 215, 220, 2 S.E.2d 521, 524, *cert. denied*, 308 U.S. 571, 60 S. Ct. 85, 84 L. Ed. 479 (1939); *see*, *McPeck v. Graham*, 56 W. Va. 200, 201, 49 S.E. 125, 126 (1904). The trial court's factual determination regarding the charge of duress should not be disturbed unless clearly wrong. Rule 52(a), W. Va. R.C.P.; *Lewis v. Dils Motor Co.*, 148 W. Va. 515, 135 S.E.2d 597 (1964).

I am authorized to state that Justice Neely joins in the foregoing portion of this dissent.

For reasons stated in a dissenting opinion prepared by Justice Sprouse, I wish to note that I join him in his opinion that the city manager's formula for computation of overtime compensation violates the public policy expressed in *W. Va. Code* 1931, 21-5C-1, *et seq.* and 8-15-10, as respectively amended. Likewise, I would reverse that part of the judgment of the Circuit Court of Ohio County which approved the pay schedule formulated by the city manager.