323 S.E.2d 604

### LOCAL 313, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS

v.

### The CITY OF MORGANTOWN, etc.

### No. 16125.

Supreme Court of Appeals of West Virginia.

Decided Oct. 17, 1984.

Dissenting Opinion Oct. 24, 1984.

Dissenting and Concurring Opinion Nov. 19, 1984.

---

Franklin D. Cleckley, Morgantown, Gregory T. Hinton, Fairmont, for appellants.

**124**

Mike Magro, Jr., Morgantown, for appellee.

MILLER, Justice:

This appeal involves a construction of our wage and hour law, W.Va.Code, 21–5C–3, as it relates to a claim for overtime pay by certain firemen of the City of Morgantown.[1] The firemen appeal contending that the circuit court erred in not granting them any award. We find that error was committed and, therefore, reverse the judgment of the circuit court.

Many of the basic facts are not in dispute. The City adopted written personnel rules which divided its employees into various classes. In an Appendix B to the personnel rules, each class of employees was given an annual salary which was broken down into monthly, biweekly, and hourly rates. The hourly rate was predicated on a forty-hour workweek. Contained in the personnel rules was this provision found in Section V–1(A): "The standard work week for city employees shall be forty (40) hours and in the case of Fire Department [sic] an average of fifty-six (56) hours per week."

On the pay schedule of Appendix B, firemen were classified along with policemen at Grade 14. Each grade contains six pay steps.[2] It is not disputed that the firemen work an average fifty-six-hour workweek, but are paid only the amount of their annual salary.

The firemen contend that they should be paid at the hourly rates set out in Appendix B, that they should receive overtime for working more than forty hours per week, and that their overtime hours should be compensated at one and one-half times the normal rate. Under this payment plan, a fireman at Step 5 of Grade 14 would receive $6.70 for each regular hour, and $10.05 ($6.70 × 1.5) for each overtime hour. With sixteen overtime hours a week, this would mean an additional $160.80 a week (16 hours × $10.05), or a total annual overtime compensation of $8,361.60 ($160.80 × 52 weeks).

The City, on the other hand, argues that the firemen clearly agreed to

---

1. The parties agree that the city firemen are covered under our wage and hour law by virtue of our earlier decision of *Kucera v. City of Wheeling*, 153 W.Va. 531, 170 S.E.2d 217 (1969), and that the key provision is W.Va.Code, 21–5C–3(a) (1980):

"On and after the first day of July, one thousand nine hundred eighty, no employer shall employ any of his employees for a work-week longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed."

2. The entire breakdown of the Grade 14 pay schedule is as follows:

|  | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 |
|---|---|---|---|---|---|---|
| Annual | 11,460.80 | 12,043.20 | 12,646.40 | 13,270.40 | 13,936.00 | 14,643.20 |
| Monthly | 955.06 | 1,003.60 | 1,053.86 | 1,105.87 | 1,161.33 | 1,220.26 |
| BiWeekly | 440.80 | 463.20 | 486.40 | 510.40 | 536.00 | 563.20 |
| Hourly | 5.51 | 5.79 | 6.08 | 6.38 | 6.70 | 7.04 |

work an average of fifty-six hours a week for the designated annual salary. It points to W.Va.Code, 8–15–10, which states, in part, that firemen "shall not be required to remain on duty in excess of one hundred twelve hours during any fourteen consecutive days' period."[3] The City argues that this provision should be read *in pari materia* with our wage and hour law, and that 112 hours for fourteen days translates to fifty-six hours on a seven-day basis.[4] It also argues that if overtime is required for time worked in excess of forty hours per week, we should work backward from the annual salary to arrive at regular and overtime rates which result in a sum equal to the annual salary.

The circuit court agreed with the City's position and refused relief to the firemen.

· We have indicated in several cases that our wage and hour law found in W.Va. Code, 21–5C–1, *et seq.*, is modeled to some extent on the federal minimum wage law contained in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. See, e.g., State ex rel. Crosier v. Callaghan,* 160 W.Va. 353, 360 n.1, 236 S.E.2d 321, 325 n.1 (1977); *Kucera v. City of Wheeling,* 158 W.Va. 860, 865, 215 S.E.2d 216, 219 (1975).[5] Certainly, the language concerning overtime in

W.Va.Code, 21–5C–3(a), "no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed," is markedly similar to the corresponding language of the federal act.[6]

The United States Supreme Court in *Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 577–78, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682, 1687–88 (1942), spoke to the policy behind the overtime wage provision of the federal act:

"By this requirement, although overtime was not flatly prohibited, financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the Act.... Reduction of hours was a part of the plan from the beginning."

*Missel* involved a question that is related to ours. An employee was paid a flat weekly amount and worked more than the maximum hours allowed without payment of overtime. The employer contended that if regular hours were calculated at the mini-

---

**3.** W.Va.Code, 8–15–10, provides:

"On and after the effective date of this section [July 1, 1971], the members of a paid fire department, without any reduction in their total annual compensation as such members, shall not be required to remain on duty in excess of one hundred twelve hours during any fourteen consecutive days' period. The members of any such paid fire department shall, by a majority vote, determine the schedule of hours to be worked in any twenty-four-hour period: Provided, that the members of any paid fire department shall not remain on duty for more than twenty-four consecutive hours except in case of an emergency requiring the service of more than one half of the department. The chief executive officer of the department is hereby empowered, authorized and directed to make the necessary assignments as provided in this section."

**4.** To the extent that W.Va.Code, 8–15–10 (*see* note 3, *supra*), provides a maximum number of hours that firemen can be required to work, it can be read as a limitation on W.Va.Code, 21–5C–3(a) (*see* note 1, *supra*), since this latter section provides no limit on the maximum number of hours that can be worked in a workweek.

Its purpose is to require the payment of overtime pay for those hours worked over forty in a workweek. However, this maximum limitation does not answer the issue presented in this case as to how the overtime pay is to be calculated.

**5.** There are provisions in the Fair Labor Standards Act relating to maximum hours or overtime that are not contained in our Act. For instance, 29 U.S.C. § 207(b), relating to extended work hours under certified collective bargaining agreements, has no counterpart in W.Va.Code, 21–5C–1, *et seq.*

**6.** The Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), provides:

"*Except as otherwise provided in this section, no employer shall employ any of his employees* who in any workweek is engaged in commerce or in the production of goods for commerce *for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.*" (Emphasis added.)

mum wage, and overtime hours were calculated at one and one-half times that rate, the fixed salary would satisfy both the minimum wage and overtime provisions of the Act. The Court rejected this contention pointing to the fact that the Act spoke in terms of an hourly computation—a workweek of a stated number of hours. Thus, the starting point for computing overtime was ascertaining the regular hourly rate of pay. *See also Masters v. Maryland Management Co.*, 493 F.2d 1329 (4th Cir.1974). It stated this cryptic formula: "Wage divided by hours equals regular rate. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours." 316 U.S. at 580 n.16, 62 S.Ct. at 1221 n.16, 86 L.Ed. at 1689 n.16.

In *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), the Court was confronted by a wage plan that specified a weekly wage based on a specified workweek exceeding the forty-hour maximum. The "hourly rate" was determined under the wage plan by taking the actual weekly hours worked and adding one-half the hours worked in excess of forty hours and dividing this total into the weekly salary. The Court found that this plan did not comport with the actual hours worked and held that there was no compliance with the federal act.

In *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459–60, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502, 1514 (1948), the Court made this general statement:

"Where there are no overtime premium payments the rule for determining the regular rate of pay is to divide the wages actually paid by the hours actually worked in any workweek and adjudge additional payment to each individual on that basis for time in excess of forty hours worked for a single employer."

▮ These and other cases have defined the federal method for determining the regular rate of pay where employees are paid on a lump sum basis whether weekly, monthly or annually, which is summarized in *Marshall v. Chala Enterprises, Inc.*, 645 F.2d 799, 801 (9th Cir.1981):

"This court has held that when employees are compensated on a lump sum basis, *'[a]bsent explicit proof of another mutually agreed upon rate of pay*, the court must infer that "the regular rate actually paid was substantially that obtained by dividing the weekly wage payable for the working of the scheduled workweek by the number of hours in such scheduled workweek."' *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 106 (9th Cir.1975) (emphasis added) (quoting *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 (1947)). *See also Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 87 (9th Cir.1975). Thus, when a weekly salary is paid, the employer is deemed to have paid the same rate for all hours worked, rather than the requisite overtime compensation, unless it can demonstrate the existence of a mutual agreement regarding the regular rate to be paid for the first forty hours." (Emphasis in original; footnote omitted).[7]

---

7. This sufficiency of an employment agreement to enable it to be used is discussed at some length in 4 Federal Regulation of Employment Service (FRES), Wage and Hour Laws § 29:89 at 69 (1982):

"In order to comply with the [Fair Labor Standards Act], an employment contract must provide for (1) a regular rate of pay, and (2) overtime compensation at the rate of at least one and one-half times the regular rate. Both of these requirements must be met, it having been held that a contract which provided for overtime compensation at one and one-half times the regular rate, but which designated no hourly rate, was invalid, as was a pay plan in which employees were paid on a fixed salary basis which contemplated overtime, but there was no explicit agreement between the employer and the employee as to the designated rate of compensation. However, in order to satisfy the statutory requirements, the contract need not express the regular hourly rate in dollars and cents, so long as it provides a formula by which the regular rate can be computed. It has been held that a proper formula is provided where the contract specifies a fixed weekly salary inclusive of regular and overtime compensation for overtime workweeks and provides an upper limit on total nonovertime hours to be worked, thereby allowing the derivation of the appropriate hourly rate." (Footnotes omitted).

*See also Yadav v. Coleman Oldsmobile, Inc.,* 538 F.2d 1206, 1207 n.1 (5th Cir.1976) (per curiam); *Mumbower v. Callicott,* 526 F.2d 1183 (8th Cir.1975); *Joseph G. Moretti, Inc. v. Boogers,* 376 F.2d 27, 28 (5th Cir.1967) (per curiam); *Rigney v. Wilson & Co.,* 61 F.Supp. 801, 803 (S.D.W.Va.1945). *See generally* 4 FRES, Wage and Hour Laws §§ 29:12, :13 and :17 (1982). Furthermore, federal law imposes on the employer the burden of establishing the existence of an express agreement as to how the lump sum payment is broken down into regular and overtime pay. *Marshall v. Chala Enterprises, Inc., supra; Mumbower v. Callicott, supra; Brennan v. Elmer's Disposal Service,* 510 F.2d 84, 86–87 n.1 (9th Cir.1975).

■ We believe that these same principles govern the operation of W.Va.Code, 21–5C–3(a), so that where employees are compensated on a lump sum basis, absent explicit proof of another mutually agreed upon rate of pay, a court must infer that the regular rate actually paid was that obtained by dividing the weekly wage paid by the number of hours actually worked.

■ In the present case, the circuit court found as a fact that the firemen were working an average of fifty-six hours per week, that the personnel rules contemplated an average week of fifty-six hours, and that these facts controlled over the hourly rate set out in the pay schedule which was based on a forty-hour workweek.[8] However, this conclusion does not resolve the overtime issue as there was no finding that there was an express agreement between the City and the firemen as to how the lump sum payment would be divided between regular and overtime payments.

■ The City suggests that it could work backward from the designated salary by calculating regular and overtime rates that would result in a yearly total equaling the designated salary, but this ignores the lack of any mutual agreement in advance. This type of post hoc or hypothetical and retrospective computation of a wage rate structure is foreclosed under federal cases. *Marshall v. Chala Enterprises, Inc., supra; Brennan v. Valley Towing Co., Inc., supra.* As stated in *Brennan,* "[i]t is the 'actual fact' of a stepped-up rate for overtime which propagates the goals of the Act, and not the hypothetical retrospective construction of such a rate structure." 515 F.2d at 106. *See generally* 4 FRES, Wage and Hour Laws § 29:89 (1982).

■ We conclude that this approach is also invalid under W.Va.Code, 21–5C–3. Thus, where a fixed salary is paid and there is no express agreement or formula shown that sets an amount for a regular rate of pay and an overtime rate of pay of at least one and one-half times the regular rate, such an agreement or formula may not be inferred from hypothetical retroactive calculations.

■ Because this case must be remanded, we do not foreclose the parties from developing facts over whether there was an express advance agreement as to a formula for setting the regular and overtime rates

---

*See also Brennan v. Valley Towing Co., Inc.,* 515 F.2d 100, 106 (9th Cir.1975); *Brennan v. Elmer's Disposal Service, Inc.,* 510 F.2d 84, 87–88 (9th Cir.1975).

**8.** There is some evidence that the firemen may work weeks of different lengths in a three-week cycle where one week of seventy-two hours is followed by two weeks of forty-eight hours each. This appears as a notation on what is labeled as "payroll voucher(s)" for the Fire Department, which is attached as Exhibit A to Plaintiff's Answers to Defendant's Interrogatories. This is also asserted in paragraph 4 of Plaintiff's Motion for Summary Judgment. Regular work cycles such as this are not covered by W.Va.Code, 21–5C–3(c), a subsection dealing with employment agreements to work irregular hours. Its federal counterpart is 29 U.S.C. § 207(f), codified the holdings of *Walling v. Halliburton Oil Well Cementing Co.,* 331 U.S. 17, 91 L.Ed. 1312, 67 S.Ct. 1056 (1947), and *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 86 L.Ed. 1716, 62 S.Ct. 1223 (1942). Under the *Belo* rule, where working hours vary from week to week in an unpredictable way, special agreements can be used which guarantee compensation for a certain number of hours, even though an employee may actually work fewer hours; and which provide overtime compensation if an employee works more than the guaranteed number of hours. *See* 4 FRES, Wage and Hour Laws § 29:130, :131 (1982); Annot., 5 A.L.R.Fed. 793, 809 (1970).

based on the annual salaries. In the event no such agreement is shown in computing overtime, a fifty-six-hour workweek will be used to determine the hourly rate, even though the firemen may have worked more or less than that amount in any given week. For the purposes of this case, we believe the fifty-six-hour workweek figure has been locked into the wage structure for the purposes of computation of overtime by virtue of the City's personnel provision specifying a fifty-six-hour average workweek. Under this formulation, the amount of overtime due based on the fifty-six-hour workweek for a Step 5, Grade 14 fireman would be $1,996.80 a year.[9]

Should the plaintiffs prevail, it will be appropriate for the circuit court to consider an award for attorney fees under W.Va. Code, 21–5C–8(c).[10]

For the foregoing reasons, the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded with directions.

Reversed and Remanded.

HARSHBARGER, Justice, dissenting:

I dissent for the reasons set out in my dissent, with which Justice McGraw agreed, in *Wells v. City of Fairmont*, 173 W.Va. 519, 318 S.E.2d 463 (1984).

Justice McGRAW also joins me in this dissent.

NEELY, Justice, dissenting in part and concurring in part:

Although I concur in the result reversing and remanding this case for further proceedings, I respectfully dissent to the majority's reasoning on the grounds that the nature of the firemen's occupation and *W.Va.Code* 8–15–10 [1971] sufficiently indicate a prior mutual understanding between the City of Morgantown and the firemen's association that firemen work a 56-hour week.

The Court refuses this day to recognize and accept the peculiarities of firefighting. Rather than accept the firemen's task for what it is, a unique reserve force resorted to in emergencies, the Court regards firemen simply as *routine municipal employees* akin to sanitation workers, street maintenance laborers, or even dog-catchers. Firemen, like the police, are municipal employees of a special kind.

All work has two dimensions—length and intensity. There are some jobs, among them those of our often heroic firemen, where the length factor is offset by the intensity factor. When engaged in extinguishing fires there is no doubt that firemen have a dangerous and frighteningly difficult occupation. But much of their time, and this is not meant as criticism, is spent relaxing and waiting to be called. The fireman waits to be summoned for a conflagration. Although firemen maintain their equipment and facilities themselves, they do not patrol our cities like their brethren the police. Firemen wait to respond. In this sense, a fireman's employment resembles that of a soldier in the nation's standing army. He awaits that awful moment when his services will be required. Patriot soldiers and firemen alike are maintained in readiness to attend to an unforeseen tragedy whose occurrence can never be predicted.

The majority opinion cites cases dealing with stevedores, truckers, gasoline station operators and maintenance and service employees. By this litany, the Court seeks to buttress its holding that firemen are not expected to work over forty hours a week without receiving overtime bonuses. What is glaringly lacking, however, is any recognition of the *sui generis* nature of fire-

---

**9.** This formulation is demonstrated as follows:

Annual Salary $13,936 ÷ 52 = $268 weekly salary
$268 ÷ 56 hours = $4.79 regular hourly rate
$4.79 × .5 = $2.40 overtime rate ($4.79 has already been paid for the fifty-six hours)

56 − 40 = 16 overtime hours × $2.40 = $38.40 weekly overtime
$38.40 × 52 weeks = $1996.80 annual overtime

**10.** The applicable portion of W.Va.Code, 21–5C–8(c), is: "The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."

fighting. Firefighting is not, simply, another occupation.

The Court states, in syllabus point 2, the inference to be made when employees are compensated on a lump-sum basis. But the Court thoughtfully attached a caveat negating this inference when explicit proof exists of another mutually agreed upon rate of pay. In the case of the firefighters of Morgantown such proof exists in *W. Va. Code* 8–15–10 [1971].

*W. Va. Code* 8–15–10 [1971] is clear evidence of the legislative expectation that firemen will be on duty more than forty hours each week. The statute prohibits firemen from working over one hundred twelve hours during any fortnight, absent an emergency. Both the city and its firefighters can reasonably have been thought to expect this provision to govern any contract in which they engaged; thus, the 56-hour workweek is the norm in firefighting.

In addition, as further evidence of an agreement on the 56-hour workweek, the City's personnel rules adopt the expectation of *W. Va. Code* 8–15–10 [1971] that firemen, alone among municipal employees, are expected to work fifty-six hours. The Court defies logic by suggesting implicitly that the City contracted with the firemen for sixteen hours weekly overtime. The City and the firefighters' association both freely agreed to a unique firefighters' workweek. Overtime would only be paid *in excess* of fifty-six hours.

The Court, therefore, refuses to uphold the foundation of a contract that the parties freely entered into. *Contractus legem ex combentione accipiunt.* The parties understood the peculiar nature of a fireman's employment and distinguished firemen accordingly. The majority's holding denies the municipality the relief it is entitled to and one that equity righteously demands.