384 S.E.2d 164

**Jack McCARTY, President of the Boone County Deputy Sheriff's Association, et al.**

**v.**

**Vernon F. HARLESS, Sheriff of Boone County, and the County Commission of Boone County, et al.**

**No. CC989.**

Supreme Court of Appeals of West Virginia.

July 28, 1989.

Francis M. Curnutte, III, Madison, for Jack McCarty, et al.

J. David Cecil, Cecil, Barth & Thompson, Charleston, for Vernon F. Harless, Sheriff and the Co. Comm. of Boone Co. et al.

BROTHERTON, Chief Justice:

This case relates to seven questions certified to this Court from the Circuit Court of Boone County. The petitioners, present and former Boone County deputy sheriffs, filed a petition for a writ of mandamus with the Circuit Court of Boone County regarding overtime pay. Following that petition, the Boone County Circuit Court certified seven questions to this Court for assistance in resolving the dispute.

The Boone County sheriff at the time this action was instituted assumed his office on January 1, 1981. At that time, there had been one civil action filed by the deputy sheriffs of Boone County for overtime compensation. That claim was settled by the deputy sheriffs. On September 10, 1981, the respondent sheriff notified all Boone County deputy sheriff employees, by memorandum, that any overtime must be approved personally by the sheriff before such overtime would be permitted. Thereafter, on November 10, 1982, the sheriff issued a second memorandum/order reiterating his position that no deputy would be permitted to work overtime hours without the specific prior approval of the sheriff or the chief deputy.

The respondent Boone County Commission issued a memorandum dated July 31, 1981, to all employees of Boone County, including the deputy sheriffs. That memorandum stated that all employees who

claimed overtime hours during any month must submit such claim at the end of the month to the sheriff for submission to the county commission for payment. The memorandum further stated that if, at the end of the pay period, the deputy sheriff determined that his or her overtime compensation was not included in the paycheck, the deputy was to notify the sheriff in writing, specifying the amount of hours for which the overtime pay was due and the date of the overtime worked. A copy of that letter was to be sent to the sheriff and to the county commission.

On October 30, 1984, the petitioners, all deputy sheriffs of Boone County, filed a petition for a writ of mandamus in the Circuit Court of Boone County, seeking an order from the court requiring the sheriff and the county commission to pay such overtime compensation which the petitioners alleged they were due, based upon hours maintained or estimated by the petitioners. The action was filed after the petitioners requested an audit to be done by the West Virginia Department of Labor.

Upon agreement of the parties, the petitioners individually submitted their alleged hours of overtime during the period based upon their own records. On July 1, 1985, the parties submitted for the court's consideration certain stipulated issues of law for the court's decision. On November 7, 1986, the Circuit Court of Boone County issued an order, presented by counsel for the petitioners, which stated that:

1. Pursuant to agreement between the parties, counsel for the petitioners will, within a reasonable time, submit to respective counsel for review and consideration information concerning when the work week for each deputy sheriff started and ended during the relevant time period pursuant to the court's prior ruling that the work week may start on any day during the week.

2. A thirty minute period for lunch shall not be considered in overtime calculations for field deputies but shall be considered for jail personnel and shall not be deducted from overtime claimed for the said jail personnel.

3. The only means by which deputies may be compensated for work performed on a holiday is a compensatory day off.

4. Any claim for overtime while a deputy was enrolled at the West Virginia State Police Academy shall not be allowed.

5. Petitioners shall be allowed to claim any overtime within a two year period prior to the filing of this case up to and including the date a final order is entered.

6. The term "overtime" shall mean hours which were actually worked and shall not include annual leave, days off, sick leave, or any type of absence during which the deputy did not actually perform his duties.

7. The sheriff and the county commission may not prevent any overtime claim by any of the petitioners due to the petitioners failure to follow a particular proceeding for reporting overtime hours to the sheriff. Any claim for overtime which shall be proven shall be considered a valid claim for which the deputies may be compensated.

This order was entered on February 3, 1987.[1]

Thereafter, on May 18, 1987, the petitioners filed an amended petition for a writ of mandamus in the Circuit Court of Boone County. The petitioners requested that the respondent sheriff and County Commission of Boone County be directed to act in their official capacities in order to pay or cause to be paid to the petitioners such overtime as they are entitled under the evidence of the case. They also asked that the court conduct a hearing to ascertain such over-

---

1. The actual entry date listed on the order is February 3, 1986. However, we note that the date is written by hand, striking through the typewritten word November. We can only con- clude that the date, February 3, 1986, was an error, as the actual order was dated November 7, 1986. Logically, the actual date of the entry of the order can only be February 3, 1987.

time salaries due the petitioners, that the court further award interest to the petitioners from the time such wages were owed, even in excess of two years, and grant such other and further relief as shall be deemed appropriate under the facts and circumstances of the case. Specifically, the petitioners argue that although W.Va.Code § 21–5C–8 (1985) provides for a two year period of limitations in which money recoverable under W.Va.Code § 21–5C–1 *et seq.* can be paid, they assert that they have accumulated arrearages in overtime payments for a period of time which exceeds the foregoing two year statute of limitations. Therefore, they assert that the two year period of limitations has no application and should not be applied to them because they have taken all steps short of filing a legal action to affect recovery of their overtime wages, including, but not limited to, causing an investigation by the West Virginia Department of Labor, Wage and Hour Division.[2]

Rather than rule on the mandamus petition, the Circuit Court of Boone County certified the following seven questions to this Court:

1. May county employees receive overtime hour compensation for hours beyond the forty-two hour work week when there are specific direct orders from the appointing authority or his designee requiring pre-overtime hours approval, when the employees have ignored or refused to comply with the advance permission requirements, and when no notice of any kind is provided to the appointing authority that overtime hours are worked? (The circuit court answered this question in the negative.)

2. Are directives or memoranda promulgated by the funding authority and the appointing authority in county government and considering procedures for authority to work overtime and for claiming overtime sufficient to bar a claim for overtime if these procedures were not followed? (The circuit court answered this question in the negative.)

3. a. May a county employee receive overtime compensation for hours worked beyond the forty-two hour work week when such employee has failed/refused to submit monthly statements for payment of such overtime hours in violation of the specific directive of the financing authority of the county, namely, the county commission? (The circuit court answers this question in the negative.)

   b. May a county employee be barred from the recovery of overtime, assuming that overtime hours were actually worked, by failure to follow any specific procedure set forth by the employer for claiming overtime, or is an employee entitled to overtime compensation merely by allegations that the overtime hours have been worked? (The circuit court would answer this question in the negative.)

4. Where county employees have worked overtime hours without prior authorization as required by the appointing authority and have further refused to submit monthly statements for overtime hours compensation in violation of the county commission's directive, and where the overtime compensation sought is not contemplated within the appointing authority's fiscal budget, which entity is responsible for such compensation for such overtime hours, if compensation is awarded, i.e., the appointing authority, the financial authority, or both? (The circuit court would answer that the responsibility is joint, the sheriff to pay from his funds designated for overtime pay,

**2.** The deputies requested that the West Virginia Department of Labor, Wage and Hour Division, institute an investigation of the respondents. In a letter dated January 27, 1984, the Department of Labor informed the Boone County Commission that there had been an investigation of their department and concluded that an audit of the payroll revealed that several employees were owed back overtime pay. The deputies contend that this amount has never been paid and is part of the compensation sought in the present action.

and that any amounts beyond the amount so designated are to be paid by the county commission.)

5. Is the work day reduced for each of the petitioners by a period of time attributable to meal time? (The circuit court answers this question in the affirmative, except that deputies serving as jail personnel and who are required to stay on site during their entire shift would not have the work day reduced by a period of time attributable to meal time.)

6. In the event that petitioners are entitled to overtime compensation, from which budget should it be paid; that is, should the compensation be paid from the sheriff's budget or from the general county funds? (The circuit court answers this question by holding that the responsibility is joint as set out in response to question 4 above.)

7. In the event that the compensation should be paid from the general county funds, what, if any, supervisory power does the county commission have over the deputies as a "co-employer"? (The circuit court answers this question in the affirmative, except that the commission may not abandon its financial obligation to such elected officials and remain ultimately responsible for valid overtime compensation claims of employees of elected officials.)

The sheriff and county commission contend that since the deputies did not follow the procedures outlined in the three separate memoranda addressed to the Boone County employees, the deputies should not be compensated for the overtime work performed outside the standard procedure. By contrast, the deputies argue that since the memoranda were never enforced, they adequately followed overtime procedures. The deputies maintain that when they worked overtime, it was done with the approval of the dispatcher on duty and the overtime, along with the regular time, was properly logged in. The deputies assert that the sheriff has refused to approve such overtime, but nonetheless requires that the overtime be performed.

### I.

We are first asked to determine whether county employees should be paid overtime for hours worked beyond the regular workweek when there are specific orders from the sheriff requiring pre-approval for any overtime, despite the fact that the deputy sheriffs failed to comply with specific procedures outlined in directives promulgated by the sheriff.[3]

There is no dispute that the deputy sheriffs are entitled to overtime under the provisions of the statute.[4] In *Amoroso v. Marion County Commission*, 172 W.Va. 342, 305 S.E.2d 299 (1983), this Court interpreted W.Va.Code § 21–5C–1 *et seq.* (1985) to provide that deputy sheriffs are employees under the overtime provision of the West Virginia Code and thus, are entitled to compensation for overtime worked. Specifically, W.Va.Code § 21–5C–5 provides that:

> [e]very employer subject to the provisions of this article shall make or cause to be made, and shall keep and preserve at his place of business for a period of two years, a written record or records of the name and address of each of his employees as herein defined, his rate of pay, hours of employment, payroll deductions, and amount paid him for each pay period.

---

**3.** In *City of Fairmont v. Retail, Wholesale and Department Store Union, AFL–CIO,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), this Court stated that "[w]e have traditionally maintained that upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." (Citations omitted.) Thus, we have the option to determine in what order and form to answer the certified questions presented to this Court.

**4.** Deputy sheriffs are employees entitled to overtime compensation benefits in the wage and hour law. *Amoroso,* 172 W.Va. at 344, 305 S.E.2d at 301. As we will discuss further in this opinion, the county commissions and sheriffs are joint employers of the deputy sheriffs and may be held liable for violations of the wage and hour law.

Finally, W.Va.Code § 21–5C–3(a) provides that "... no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified...."[5]

In syllabus point 1 of *Local 313, International Association of Firefighters v. City of Morgantown*, 174 W.Va. 122, 323 S.E.2d 604 (1984), this Court held that "our wage and hour law found in W.Va.Code, 21–5C–1, *et seq.*, is modeled to some extent on the federal minimum wage law contained in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*.... Certainly, the language concerning overtime in W.Va. Code, 21–5C–3(a), ... is markedly similar to the corresponding language in the federal act."[6] *Id.* 174 W.Va. at 125, 323 S.E.2d at 606–07 (citations omitted). Therefore, we turn to federal case law for assistance in determining the applicable standards.[7]

The sheriff contends that the deputies have the burden to prove that the employer "permitted" them to work the overtime in question. In *Davis v. Food Lion*, 792 F.2d 1274 (4th Cir.1986), the Fourth Circuit addressed a situation in which an employee sought overtime for hours worked against company policy. *Id.* at 1275. Under the Federal Labor Standards Act of 1938, 29 U.S.C.A. § 203(g), (West 1978), the term "employ" which was defined to include "to

suffer or permit to work," has been consistently interpreted to mean knowledge of the employer. *Id.* at 1276. The court determined that "[t]he dispute before us simply concerns whether, as a procedural matter, proof of an employer's knowledge is an element of the plaintiff/employee's case or whether lack of knowledge is an affirmative defense to be raised and proved by the employer." *Id.* After examining the Federal Labor Standards Act (FLSA), the court concluded that the employee must prove "knowledge, either actual or constructive, of his overtime work."[8] *Id.* "The Act requires the plaintiff to prove that he was 'employed' by the defendant, and that means proof that the defendant knew or should have known that the plaintiff was working overtime for the employer." *Id.* at 1277.

In a subsequent case, *Pforr v. Food Lion*, 851 F.2d 106 (4th Cir.1988), the Fourth Circuit reiterated that the concept of "suffer or permit to work," as found in §§ 203(g) and 207 of the FLSA, encompassed the knowledge of the employer.[9] *Id.* at 109. In essence, the court stated that knowledge by the employer of the off-the-clock work "must be read together with the language of the statute: 'suffer' or 'permit' to work." *Id.* Further, sufferance by the employer, according to *Pforr*, consists of more than pointing out employ-

---

**5.** In 1980, the second regular session of the 64th Legislature amended the wage and hour law, effective July 1, 1980, to decrease the maximum allowable hours worked per week without being paid overtime from forty-two to forty hours. W.Va.Code § 21–5C–3(a), 1980 W.Va. Acts, ch. 130.

See *State ex rel. Crosier v. Callaghan*, 160 W.Va. 353, 236 S.E.2d 321 (1977), in which this Court noted that W.Va.Code § 21–5C–8 expressly authorized the payments of back overtime for the two previous consecutive years. *Id.* 160 W.Va. at 363, 236 S.E.2d at 326–27.

**6.** *See, e.g., State ex rel. Crosier v. Callaghan*, 160 W.Va. at 360 n. 1, 236 S.E.2d at 325 n. 1; *Kucera v. City of Wheeling*, 158 W.Va. 860, 965, 215 S.E.2d 216, 219 (1975).

**7.** The Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207(a)(1), (West 1989), provides: [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for com-

merce, or is employed in an enterprise engaged in commerce or in the production of goods for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

There are, however, sections in the Fair Labor Standards Act which are not contained in our Act. For example, there is no counterpart in W.Va.Code § 21–5C–1 *et seq.* to 29 U.S.C. § 207(b), which relates to extended work hours under certified collective bargaining agreements.

**8.** *See* 48A Am.Jur.2d § 2237 (1979) for a discussion of the effect of unauthorized work.

**9.** *See Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 577–78, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682, 1687–88 (1942), for a discussion of the policy behind the overtime wage provision in the federal statute.

er knowledge of a few instances of off-the-clock-work.[10]  *Id.*  Thus, unless the employee established both elements, the plaintiff/employee could not recover on an overtime claim.  "We explicitly stated that this burden is squarely upon the plaintiff; a defendant in section 7(a)(1) cases is not required to show lack of knowledge as an affirmative defense."  *Id.*[11]

We believe the same reasoning as that found in *Pforr* and *Food Lion* is applicable to our analysis of the question before us.[12]  Thus, the burden is on the plaintiffs to establish knowledge, either actual or constructive, that the employer suffered or permitted the performance of uncompensated overtime work.

■  However, the recovery of any overtime pay owed by the respondents is limited by W.Va.Code § 21–5C–8 (1985).  West Virginia Code § 21–5C–8(b) states that "[a]ny person whose wages have not been paid in accord with this article ... may bring any legal action necessary to collect a claim under this article.  With the consent of the employee, the commissioner shall have the power to settle and adjust any claim to the same extent as might the employee."  Section 21–5C–8(d) provides that "[i]n any such action the amount recoverable shall be *limited to such unpaid wages as should have been paid by the employer within two years next preceding the commencement of such action.*  Nothing in this article shall be construed to limit the right of an employee to recover upon a contract of employment."  (Emphasis added.)  Moreover, in *Ables v. Mooney*, 164 W.Va. 19, 264 S.E.2d 424 (1979), this Court held that an employer cannot avoid the two-year provision found in subsection (d) if they are found to be liable for a violation of the wage and hour law.  *Id.* 164 W.Va. at 36, 264 S.E.2d at 433.  Conversely, despite their protests to the contrary, the deputy sheriffs cannot avoid the two-year period provided by statute in light of the specific legislative enactment.[13]

In syllabus point 2 of *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968), this Court held that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."  Furthermore, "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments."  Syl. pt. 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).

■  We believe the language of W.Va. Code §§ 21–5C–3 and 21–5C–8 is both clear and unambiguous.  The deputy sheriffs are entitled to overtime for any work performed for a workweek longer than forty hours.  In an action for overtime, however, the amount recoverable shall be limited to the unpaid wages "as should have been

**10.**  *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), does not require that a plaintiff prove each hour of overtime worked with unerring accuracy or certainty.  The trial court may draw "whatever reasonable inferences" available from the employee's evidence regarding the amount of time spent on overtime.  *Id.* at 693, 66 S.Ct. at 1195, 90 L.Ed.2d at 1526.

**11.**  In *Swanson v. Westfield News Advertiser, Inc.,* 26 Wage & Hour Cas. 918 (U.S.D.C.Mass. 1983), the District Court stated that:

[w]ere the plaintiffs aware of the policy [not allowing overtime without prior approval]?  Did they apply for permission to work overtime?  If these questions are answered in the affirmative, an inference would arise that the defendant knew or should have known that employees were working more than forty hours per week and yet refused to compensate them.  Yet, when the record now before me is viewed in the light most favorable to the

non-moving party, ... I must conclude that even though the plaintiffs knew of the employer's policy, they failed to adhere to the requirement to notify supervisors of their intention to work overtime hours.

*Id.* at 921.

**12.**  *See also* syllabus point 7, *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986).

**13.**  *Ables* denied state troopers back overtime pay under W.Va.Code § 21–5C–8 for several reasons which are not applicable in the current situation.  There is no question this suit is not precluded by the State's constitutional immunity from suit since this action involves a suit against the Boone County Commission, not the State or its agency.  Further, we will not deal with the issue of the retroactivity of the payments since deputy sheriffs were never the subject of the overruled decision, *State ex rel. Giles v. Bonar,* 155 W.Va. 421, 184 S.E.2d 639 (1971), which was the basis of the decision in *Ables.*

paid by the employer within two years next preceding the commencement of such action." W.Va.Code § 21–5C–8(d). Further, the sheriff and the county commission, as joint employers of the deputy sheriffs, have a right to determine the administrative procedures for their offices. These procedures include the method for controlling and approving overtime worked as long as the procedures do not violate the statutory directives of W.Va.Code § 21–5C–1 *et seq.*

In the case now before us, the facts have not been sufficiently developed below to permit us to reach a conclusion on the merits of the case, and the case will be remanded for further development. However, if the deputy sheriffs can prove that the sheriff or county commission had actual or constructive knowledge of the overtime worked, and thus suffered or permitted them to work, the deputies are entitled to overtime pay for time worked, although the amount recoverable is limited by the two-year statute of limitations found in W.Va.Code § 21–5C–8.

## II.

The next issue certified to this Court is the question of whether deputy sheriffs should be paid overtime for lunch hours spent on call. The respondents contend that overtime is not due for the lunch period, although they fail to cite any authority for that position.

There is no statutory provision in the West Virginia Code which deals with the precise issue of whether meal periods should be included in the daily hours calculation for deputy sheriffs.[14] However, the West Virginia Code of State Rules, CSR 42–8–9.8 (1982), provides that "[b]ona fide

meal periods are not work time." Section 42–8–9 also states that:

> 9.1. The workweek.—The workweek includes all time during which an employee is necessarily required to be on the employer's premises on duty or at a prescribed work place.
>
> 9.2. Nonwork time.—Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own time are not hours worked.

Finally, § 9.10 defines "on-call time" as:

> (a) An employee who is required to remain on-call on the employer's premises, or so close thereto, or at his home so that he cannot use the time effectively for his own purposes is working while on-call.
> (b) An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with his employer where he may be reached is not working while on-call.

As we previously noted, W.Va.Code § 21–5C–1 *et seq.* is closely modeled after the federal wage and hour statute. Consequently, the Wage and Hour Division of the Department of Labor, 29 C.F.R. 785.–19(a) (1988), also provides that "[b]ona fide meal periods are not worktime." Similarly, bona fide meal periods are defined under 29 C.F.R. 785.19(a) to require that:

> [t]he employee must be completely relieved from duty for the purposes of eating regular meals ... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

*See also Blain v. General Electric Co.,* 371 F.Supp. 857 (W.D.Ky.1971).[15]

---

**14.** West Virginia Code § 21–5C–1(h) (1985) defines "hours worked" as "the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each work day, time spent in walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and activities which are preliminary to or postliminary to said principle activity or activities, subject to such

exceptions as the commissioner may by rules and regulations define."

**15.** 29 C.F.R. 785.17 defines on-call time as "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials

In light of the similarities between W.Va. Code § 21–5C–1 *et seq.* and the FLSA, we believe that the petitioners are entitled to have the time spent on call during their meal period included in their daily work hours calculation. However, consistent with the West Virginia Department of Labor Rules and Regulations, only those who are required to stay on site or at a particular location during their meal period should be paid for that time.

### III.

The third question before this Court is whether the sheriff, the county commission, or both, are responsible for overtime pay, if any, owed to the deputy sheriffs. West Virginia Code § 7–7–7 (1984) provides that the "sheriff ... shall then fix the compensation of their assistants, deputies and employees based on the total amount of money designated for expenditure by their respective offices by the county commission and the amount so expended shall not exceed the total expenditure designated by the county commission for each office."

The Court addressed this issue in *Amoroso v. Marion County Commission,* 172 W.Va. 342, 305 S.E.2d 299 (1983), in which we held that the county commissions and sheriffs are joint employers of the deputy sheriffs:

> [a]lthough it is true that a sheriff can hire and fire individual deputy sheriffs without the commission's consent, and as such acts as an employer by the explicit language of the act, the sheriff "does not have the complete or the exclusive control of the internal police affairs of the county." *Hockman v. County Court of Tucker,* 138 W.Va. 132, 75 S.E.2d 82 (1953). A county commission in exercising its general control of the fiscal affairs of the county, determines the overall amount of money to be allowed to the sheriff's office, including an amount for compensation of deputy sheriffs. W.Va. Code, 7–7–7. The term "employ", as noted earlier, is expansively defined to include not just the act of hiring, but also the act of permitting a person to work.

where he may be reached is not working while

The act, then, by its terms, includes a county commission within the definition of an employer, even when the commission need not consent to hiring.

*Id.* 172 W.Va. at 346–47, 305 S.E.2d at 303. The Court concluded that although the commission and sheriff are joint employers, it did not necessarily mean that both were liable under the Minimum Wage Act. "The facts of each case must be considered. If, for example, a commission provides funds for overtime compensation, but a sheriff for an invalid reason refuses to pay overtime compensation, then only the sheriff would be the responsible employer." *Id.* 172 W.Va. at 348, 305 S.E.2d at 304.

Under the standard announced in *Amoroso,* it is also clear that if the sheriff has requested funding for overtime compensation, he is liable to pay the legitimate overtime claims from his budget. The issue becomes murky, however, where the overtime budgeted by the sheriff has been depleted while employees continue to claim overtime from general county funds. In *State ex rel. Cabell County Deputy Sheriff's Association v. Dunfee,* 163 W.Va. 539, 258 S.E.2d 117 (1979), this Court held that a sheriff is prohibited by the provisions of W.Va.Code § 7–7–7 from giving deputy sheriffs a raise in salary if the increases would cause his expenses to exceed the county commission approved budget for his office. To order the sheriff to pay the increases would force him to exceed his statutory authority and to perform an illegal act. *Id.* 163 W.Va. at 541, 258 S.E.2d at 119. Specifically, the Court stated that:

> [t]he [deputy sheriffs] association has failed to show any legal duty of the county commission to appropriate funds for raises to deputy sheriffs, when the raises were not in the budget but were given by the sheriff anyway and exceeded his spendable money. If this were so, sheriffs or any other county officers, by giving salary increments, could ruin county finances when they did so without county commission approval. Counties would be paying in IOU's.

*Id.* 163 W.Va. at 541, 258 S.E.2d at 118.

While the situation in the case before us is similar, we believe that a legal duty has

on call."

been demonstrated on the part of the sheriff and the county commission to pay overtime for work properly performed and reported.[16] In *State ex rel. Crosier v. Callaghan*, 160 W.Va. 353, 236 S.E.2d 321 (1977), the Court held that W.Va.Code § 21–5C–8 authorized the payment of back overtime wages for two consecutive years immediately preceding an employee's action for unpaid wages. "To the extent that retroactive liability for unpaid wages is incurred against an employer, it is incurred at the time liability is determined." *Id.* 160 W.Va. at 363, 236 S.E.2d at 327. The *Crosier* Court recognized that even if such payment infringes upon designated fiscal appropriations, the employee need not identify a fund from which he can be paid if "an employee is lawfully entitled to remuneration for services rendered. When there are unexpended funds in any account which may be lawfully charged with the payment of this debt, whether it be from the personal services appropriation or from the general fund in the state treasury, then petitioner is entitled to mandamus directing payment of the amount due." *Id. See also Kucera v. City of Wheeling*, 158 W.Va. 860, 215 S.E.2d 216 (1975).

We, therefore, conclude that any monies owed to pay overtime, if any, should be paid first from the sheriff's budget. Once that budget is exhausted, then the county commission, as a joint employer of the deputy sheriffs, is responsible to pay the overtime due.[17] We acknowledge the problem, raised in *Dunfee*, of requiring counties to pay "IOU's." If, however, the sheriff and county commission work closely to ensure that overtime remains within budget, this problem can be avoided.

The final question put to this Court revolves around what supervisory power the county commission would have if we rule that the overtime compensation should be paid from the general county funds, since the county commission would be a co-employer of the deputy sheriffs. We decline to answer this final certified question in any detail. To do so would place an impossible burden on this Court since, for every responsibility we identify, there could be two others of which we are not aware. Rather, we direct the circuit court's attention to our opinions in *Amoroso, Dunfee*, and W.Va.Code §§ 7–7–7 and 21–5C–1 *et seq.* for guidance.

For the foregoing reasons, we remand this case to the Circuit Court of Boone County for further development of the facts and resolution of the issues based upon this opinion.

Certified questions answered; case remanded for disposition.

---

16. *See* W.Va.Code § 21–5C–3(a).

17. West Virginia Code § 21–5C–8 provides a civil remedy for employees who have been paid less than the applicable wage to which the employee was entitled by virtue of article 5C. This

Code section gives the employee the right to proceed against the employer where the wages were not paid in accordance with article 5C for two years preceding the commencement of the legal action.